*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0035p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHAEL E. VALENTINE,

        *Petitioner-Appellee,*

    *v.*

KHELLEH KONTEH, Warden,

        *Respondent-Appellant.*

No. 03-4027

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00535—Lesley Brooks Wells, District Judge.

Argued: September 23, 2004

Decided and Filed: January 24, 2005

Before: MERRITT, MOORE, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** M. Scott Criss, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellant. Barbara A. Farnbacher, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee. **ON BRIEF:** M. Scott Criss, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellant. Barbara A. Farnbacher, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee.

    MERRITT, J., delivered the opinion of the court, in which MOORE, J., joined. GILMAN, J. (pp. 11-14), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

    MERRITT, Circuit Judge. An Ohio jury convicted Michael Valentine of 40 counts of sexual abuse, for which he was sentenced to 40 consecutive life sentences. In bringing a petition for habeas corpus, he contends that the Ohio indictment violated his constitutional right to due process. Valentine was convicted of 20 "carbon-copy" counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded. The prosecution did not distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial. The only evidence as to the number of offenses was provided by the testimony of the child victim, who described typical abuse scenarios and estimated the number of times the abusive offenses occurred, e.g., "about 20," "about 15" or "about 10" times. The District Court issued the writ of habeas corpus with respect to all counts on the ground that the indictment and conviction violated

1

Valentine's federal due process rights to notice of the crime charged with sufficient specificity so that he would not again be put in jeopardy of the same crime.

We conclude that in the view of the testimony and the indictment language, one of the child rape and one of the penetration counts can be sustained but that the others must be set aside. Valentine had notice that he was charged with the two separate crimes during the period of time specified in the indictment. But he had no way to otherwise identify what he was to defend against in the repetitive counts and no way to determine what charges of a similar nature could be brought against him in the future if he were re-indicted. Thus, we regard the 20 child rape counts as charging one crime and the 20 penetration counts as charging another single crime. Our ruling means that Valentine cannot be subsequently charged with the same crimes against the stepdaughter during the stated period.

## I.

Michael Valentine was prosecuted, tried, and convicted for the sexual abuse of his eight-year-old stepdaughter. Valentine began living with the victim's mother in August of 1991 and married her in February of 1994. On January 18, 1996, the child told her second-grade teacher that her stepfather had been abusing her. The teacher took her to the principal, who contacted the Cuyahoga County Department of Family Services and her mother.

On May 25, 1996, a grand jury in Cuyahoga County issued a forty-count indictment, charging Valentine with twenty counts of child rape and twenty counts of felonious sexual penetration of a minor. According to the indictment, all forty offenses occurred between March 1, 1995 and January 16, 1996. Each rape count alleged that Valentine "unlawfully engaged in sexual conduct with [the stepdaughter] not his spouse by purposely compelling her to submit by the use of force or threat of force, [the stepdaughter] being under the age of 13 years, to-wit: d.o.b. 11-18-87." No further information was included to differentiate one count from another. Likewise, each felonious sexual penetration count was identical, alleging that Valentine "unlawfully without privilege to do so inserted a part of the body, an instrument, apparatus or other object to-wit: finger, into the vaginal or anal cavity of another, to-wit: [the stepdaughter] not the spouse of the offender and who was under the age of 13 years, to-wit: d.o.b. 11-18-87, by purposely compelling her to submit by force or threat of force." The bill of particulars did not offer further differentiation among the counts. Instead, it merely restated the allegations and identified the family home as the location of all forty offenses.

At the 1996 jury trial, the only witness to testify as to the number of assaults committed by the defendant was the eight-year-old victim herself. She testified that Valentine forced her to perform fellatio in the family living room on "about twenty" occasions and that Valentine digitally penetrated her vagina in the family living room on "about fifteen" occasions. The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom. She additionally testified that Valentine achieved anal penetration with his penis on "about ten" occasions. As the Petitioner points out, the victim altered her numbers somewhat during cross-examination.

The jury returned a verdict convicting Valentine of all 40 counts, and the court of common pleas for Cuyahoga County sentenced him to 40 consecutive life terms. The Ohio Court of Appeals affirmed the convictions on all 20 counts of rape but only 15 of the 20 felonious sexual penetration counts. Finding that "no evidence supports the additional five counts," the court reversed the five convictions on Counts 36-40 and vacated the sentences imposed for them. The Ohio Court of Appeals presumably based these reversals on the child's testimony that Valentine had digitally penetrated her vagina "about fifteen" times. The Ohio Supreme Court denied leave to appeal. Valentine then unsuccessfully pursued state post-conviction remedies.

In March 1999, Valentine filed a petition in the Northern District of Ohio seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, he raised four issues, only one of which is appealed

to this court. Valentine claimed that his "constitutional right to due process of law was denied when he was tried and convicted on an indictment which did not specify a date or distinguish between conduct on any given date." The District Court issued the writ finding the indictment in the case violated Valentine's due process rights. Specifically, the court found that the identical counts in the indictment violated his due process right to be notified of the crime charged with reasonable certainty so that he could fairly protect himself from double jeopardy.

## II.

Valentine's petition was made pursuant to 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The relevant portion of the habeas statute provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was not adjudicated on the merits in the State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.
>> 28 U.S.C. § 2254(d)(1).

In order for Valentine to obtain federal habeas relief, he must demonstrate that his case satisfies the condition established by 28 U.S.C. § 2254(d)(1). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained the impact of this amendment:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle of the facts of the prisoner's case.

529 U.S. at 412-13. Writing for the Court, Justice O'Connor points out "that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. The Court holds that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the writ may issue only if the state court's application of Supreme Court precedent is objectively unreasonable. *Id.* As this Court has noted, § 2254(d)(1) "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998). As the District Court found, "the Ohio Court of Appeals correctly construed the issue to be whether the lack of specificity in the indictment as to dates and conduct resulted in a denial of Mr. Valentine's right to due process of law." Thus, Valentine's habeas petition turns on whether the Ohio state courts unreasonably applied Supreme Court precedent regarding the due process requirements for charging instruments.

## III.

In granting Valentine the writ, the District Court relied upon *Russell v. United States*, 369 U.S. 749 (1962), and found that the Ohio Court of Appeals had unreasonably applied its due process principles in Valentine's appeal. In *Russell*, the Supreme Court put forth the criteria by which the sufficiency of an indictment is to be measured:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared

to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

369 U.S. at 763-64. Thus, an indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy.[1] While the federal right to a grand jury indictment has never been found to be incorporated against the states, *see Hurtado v. California*, 110 U.S. 516, 534-35 (1884), courts have found that the due process rights enunciated in *Russell* are required not only in federal indictments but also in state criminal charges. *See De Vonish v. Keane*, 19 F.3d 107, 108 (2d Cir. 1994); *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992); *see also Isaac v. Grider*, 2000 WL 571959, at *4 (6th Cir. 2000); *Parks v. Hargett*, 1999 WL 157431, at *3 (10th Cir. 1999).

While the indictment in this case did comply with the first prong of *Russell* by adequately setting out the elements of the charged offense, the multiple, undifferentiated charges in the indictment violated Valentine's rights to notice and his right to be protected from double jeopardy. The failure of the Ohio Court of Appeals to rectify these violations constitutes an unreasonable application of well-established constitutional law as announced by the Supreme Court.

A.

Under *Russell*, criminal charges must give a defendant adequate notice of the charges in order to enable him to mount a defense. 369 U.S. at 763-64. Fair notice is essential in criminal prosecutions:

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by the charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

*Cole v. Arkansas*, 333 U.S. 196 (1948); *see also Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("[A] conviction upon a charge not made . . . constitutes a denial of due process."); *In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense . . . are basic in our system of jurisprudence."); *Madden v. Tate*, 1987 WL 44909, at *3 (6th Cir. 1987) ("The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense.").

As the District Court decided this case on "double jeopardy" grounds, it did not rule on whether the indictment provided Valentine with adequate notice. Yet the court did suggest that it was "doubtful that the indictment in this case 'sufficiently apprises the defendant of what he must be prepared to meet.'" *Valentine v. Huffman*, 285 F. Supp. 2d at 1024 (quoting *Russell*, 369 U.S. at 763-64). Valentine essentially points to

---

[1] *See also U.S. v. Hamling*, 418 U.S. 87, 118 (1974); *U.S. v. Cruishank*, 92 U.S. 542, 558 (1875). The *Cruishank* opinion demonstrates that these principles have been well-established for quite some time:

> The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.

92 U.S. at 558.

two notice problems with the indictment: (1) the wide date range and (2) the lack of differentiation among the criminal charges.

First, Valentine challenges the wide date range itself as standing in the way of his defense. Valentine contends that the lack of specific dates and times prejudiced him as he had alibi defenses for large portions of the period covered by the indictment. *See Valentine*, 285 F. Supp. 2d at 1025. The state maintains that such indictments are necessary as the young victims in abuse cases like this one "have only a limited perception of time and limited faculties to define specific dates and times of the traumatic sexual abuse they endured." Resp.'s Br. at 2. As the Ohio Court of Appeals decision emphasizes, Ohio law supports this position. *See State v. Daniel*, 97 Ohio App. 3d 548, 556 (1994) ("It is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity."); *State v. Mundy*, 99 Ohio App. 3d 275, 296 (1994) ("In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time.").

This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. *See Isaac v. Grider*, 2000 WL 571959 at *5 (four months); *Madden v. Tate*, 1987 WL 44909, at *1-*3 (6th Cir. 1987) (six months); *see also Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir. 1992) (six months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (three years); *Parks v. Hargett*, 1999 WL 157431, at *4 (10th Cir. 1999) (seventeen months). Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved. The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse. Valentine's claims regarding the lack of time- and date-specific counts therefore fail.

The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.

Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own. The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20. Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest. Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents. The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts. Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself. In a similar case, the Court of Appeals for the Tenth Circuit reviewed a habeas petition from a prisoner convicted of three counts of sexual abuse. *Parks v. Hargett*, 1999 WL 157431 (10th Cir. 1999). The charging information set forth multiple identically worded counts of sexual abuse of an unnamed minor over a seventeen-month period: "[O]n or between July 1988 and November 1989 . . . defendant did unlawfully . . . look upon, touch and feel of the body and private parts of a six year

old female child in a lewd and lascivious manner . . . in Bryan County, Oklahoma." *Id.* at *2. The court indicated that the charging information alone did not have the requisite specificity:

> "Where the statutory definition of an offense employs generic terms, it is not sufficient to charge the offense in the same terms employed by the statute; the indictment must 'descend to particulars.'" *United States v. Sullivan*, 919 F.2d 1403, 1411 (10th Cir. 1990) (quoting *Russell v. United States*, 369 U.S. 749, 765 . . . (1962)); *see also Hamling*, 418 U.S. at 117-18 ("[t]he language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.").

*Id.* at *3. Yet, the *Parks* court did not reach the issue as it determined that the defendant had adequate actual notice of the charges against him. *Id.* At a pre-trial hearing, the defendant "received actual notice of the name and identity of the six-year old child and the fact that he was charged with three separate incidents of molestation, one alleged to have occurred in his bedroom, another in his hot tub, and a third in the bathroom of his home." *Id.* With this specific information, the court concluded that the defendant had "actual notice of sufficiently specific facts to respond to the charges and prepare an adequate defense." *Id.*

In that case, the child victim would have demonstrated three distinct recollections: (1) abuse in the defendant's bedroom, (2) abuse in his hot tub, and (3) abuse in his bathroom. The jury presumably would have heard testimony as to each of the three recollections and would have assessed the credibility of the child victim regarding each count. In the present case, no factual distinctions were made among any of the forty counts. The record indicates that some specification was possible. The child victim described different locations (bedroom, living room, parents' room, siblings' room), different sexual actions (fellatio, vaginal penetration, anal penetration), different times of day (early morning, after school, in the middle of the night). Despite this potential, little effort was made to disaggregate the whole of the abuse and try the case in forty counts as charged.

The indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced. Valentine was prosecuted and convicted for a generic pattern of abuse rather than for forty separate abusive incidents. States have the authority to enact criminal statutes regarding a "pattern" or a "continuing course" of abuse.[2] They do not have the power to prosecute one for a pattern of abuse through simply charging a defendant with the same basic offense many times over.

The due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial. But, due to the failure to differentiate, Valentine could only successfully defend against some of the charges by effectively defending against all of the charges. The trial court acknowledged this difficulty in chambers with the attorneys: "This case; the evidence as I recall in reviewing my notes is that if the jury chooses to believe the evidence as they understand it, and comes back with a conviction, *I think this is a[n] all or*

---

[2] *See, e.g., State v. Fortier*, 780 A.2d 1243, 1249-50 (N.H. 2001) (discussing N.H. Rev. Stat. Ann. § 632-A: 2, III (2004)); *People v. Quinones*, 8 A.3d 589 (N.Y. App. Div. 2004) (discussing N.Y. Penal Law § 130.75 (McKinney 2003)). Such pattern statutes are, in part, a response to the inability of child victims to provide specific information about abuse:

> Pattern statutes for sexual assaults have been enacted to respond to the concern that many young victims, who have been subject to repeated numerous incidents of sexual assault over a period of time by the same assailant, are unable to identify discrete acts of molestation. The focus of a pattern statute is to criminalize a continuing course of sexual assaults, not isolated instances. The essential culpable act is the pattern itself, that is, the occurrence of more than one sexual assault over a period of time, and not the specific assaults comprising the pattern.

6A Corpus Juris Secundum § 75 *Sexual Assault* (2004).

*nothing case*." Apx. 1300 (emphasis added). The trial court acknowledged that the jury would either convict Valentine on all forty counts or acquit him of all forty counts. The prosecution should not have indicted and tried this as an "all or nothing" case and the trial court should not have permitted such a trial. Defendants must be given adequate notice of all of the charges made against them. While Valentine had legal and actual notice that he must defend against the child's allegations of sexual abuse over a ten-month period, he was given no notice of the multiple incidents for which he was tried and convicted.

B.

Due process also requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy. In the present case, the indictment presented two important double jeopardy problems. First, there was insufficient specificity in the indictment or in the trial record to enable Valentine to plead convictions or acquittals as a bar to future prosecutions. Second, the undifferentiated counts introduced the very real possibility that Valentine would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense.

In *Russell*, the court found that indictments are only constitutionally sufficient if "the record shows with accuracy to what extent he may plead a former acquittal or conviction" in proceedings taken against him for a similar offense. 369 U.S. at 764. The District Court held that the indictments in this case failed to comply with this mandate of *Russell*. 285 F. Supp. 2d at 1026-27. In *Russell*, a case in which the defendants were being tried for their failure to answer questions before a congressional subcommittee, the Court ruled that the charging information was specific enough to protect against double jeopardy:

> Since the indictments set out not only the times and places of the hearings at which petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that the petitioners would be fully protected from again being put in jeopardy for the same offense, particularly when it is remembered that they could rely upon other parts of the present record in the event that future proceedings should be taken against them.

369 U.S. at 764. In this case, there was no specificity regarding the factual offenses Valentine allegedly committed. If Valentine had been acquitted of these 40 charges, it is unclear what limitations would have been imposed on his re-indictment. Would double jeopardy preclude any prosecution concerning the abuse of this child victim, the abuse of this victim during the stated time period, the abuse of this victim at their residence, the stated sexual offenses in the indictment, the offenses offered into evidence at trial, or some group of forty specific offenses? We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury. If Valentine had been found not guilty, it is not clear to what extent he could ably assert that his acquittal barred prosecution for other similar incidents.

The state now declares it "is willing to stipulate, Valentine cannot be indicted for either rape or felonious sexual penetration for the period set forth in the indictment." Resp.'s Br. at 11. By their argument, this stipulation would cure any double jeopardy problem. *See Fawcett v. Bablitch*, 962 F.2d 617, 619-20 (7th Cir. 1992) ("The prosecutor took care of the [double jeopardy issue] by stipulating that [the defendant] would be immune from further prosecution for any sexual contact with [the victim] during the entire six-month period [of the indictment].") It appears that the present case is distinguishable as Ohio's current stipulation was made only after Valentine's trial and conviction. The state additionally contends that as a practical matter, Valentine will face no further prosecution. They argue that since Valentine is serving 35 consecutive life sentences, any risk of double jeopardy is "purely theoretical." Resp.'s Br. at 28-29. This argument suggests that placing a defendant at risk of double jeopardy is acceptable so long as the prosecution wins and is pleased with the verdict and sentence. In this appeal, it is immaterial that Valentine faces no current risk of being tried a second time. Courts in habeas proceedings must ensure prisoners were afforded proper constitutional protections during their state criminal proceedings. As the carbon-copy

counts of Valentine's indictment would have complicated any subsequent assertion of double jeopardy, we find that his due process rights were violated.

In a similar case, this Court found that a petitioner's convictions on several identically worded charges put the defendant at risk of double jeopardy, and thus constituted an "unreasonable application" of *Russell*. *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959, at *5 (6th Cir. 2000). In *Isaac*, the petitioner was tried on seventeen counts of sodomy and sexual abuse in connection with three child victims. *Id.* at *2. Ten of those counts dealt with the abuse of one boy. *Id.* There were five identical counts of second degree sodomy and five identical counts of second degree sexual abuse. *Id.* The trial court directed verdicts for four of the ten counts and presented the remaining six counts to the jury. *Id.* The petitioner was convicted on all six counts. On appeal, the court issued the writ, finding that the petitioner could have been convicted of sexual abuse charges for which he had already been acquitted by a directed verdict: "the identical charges introduced the risk of double jeopardy and, indeed may have already resulted in double jeopardy in *this prosecution . . . .*" *Id.* at *5 (emphasis in original). Neither the indictment nor the jury instructions informed the jury which factual incidents were connected to which charges. They had heard evidence of ten separate incidents, but were called to decide only six charges. Thus, it was possible that the jury either convicted him of counts for which he had been acquitted or convicted him without jury unanimity as to the underlying factual offenses.

Similar dangers were present in Valentine's trial. As the charges were not linked to differentiated incidents, there is resulting uncertainty as to what the trial jury actually found. On direct appeal, the Ohio Court of Appeals ruled that there was no evidentiary basis for five of the felonious sexual penetration charges. This ruling by the appeals court essentially acknowledges that Valentine was "over-convicted" on the evidence presented, and thus likely subjected to double jeopardy in his initial trial. The appeals court ruling suggests that the jury convicted him of 20 counts based on the evidence of 15. Due process requires that criminal charges be specific enough to protect defendants from this danger of double jeopardy. The multiple, identically worded counts deprived Valentine of this protection.

C.

For the reasons stated above, we affirm the District Court's ruling that the indictment charging Valentine with multiple, identical and undifferentiated counts violated the constitutional requirements imposed by due process. We agree with the District Court's determination that "the Ohio Court of Appeals' application of clearly established federal law was not only incorrect, but unreasonable." When prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy. Even under the deferential standard of AEDPA, these convictions resting on such a clear violation of federal law cannot stand.

**IV.**

Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts. The exigencies of child abuse cases necessitate considerable latitude in the construction of criminal charges. The prosecutors in this case, however, abused this wide latitude by piling on multiple identical counts. Numerous charges cannot be made out through estimation or inference. Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. Due process requires this minimal step. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction.

The deficient charging of the prosecution and the management failure of the trial court, however, should not disturb the verdicts for Count 1 (the first rape count) and Count 21 ( the first felonious sexual penetration count) of this case. The prosecutor presented substantial evidence of ongoing abuse, against which Valentine had notice and opportunity to defend. The jury heard the witnesses, evaluated the

evidence, and was convinced of Valentine's guilt. Had this case been tried in two counts, the convictions would clearly stand. Thus, any constitutional error with regard to the other 38 counts should not render invalid these two counts. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (finding that when federal courts collaterally review convictions, trial errors are harmless unless they "had a substantial and injurious effect or influence in determining the jury's verdict."). The constitutional errors in this case lie in the multiple identical counts rather than the generic statutory language of the charges or the wide time frame of the indictment. The evidence in the record does not indicate that these identical counts made an impact on the jury's consideration of Count 1 and Count 21. Without such evidence, issuance of an unconditional writ of habeas corpus is inappropriate.

Our dissenting colleague would find that all of the convictions at issue in this appeal should stand as they are not unreasonably inconsistent with constitutional requirements concerning criminal charges. Notably, the dissent cannot offer any precedents from this Court or any other that would support the use of multiple, identical and undifferentiated counts. Instead, the primary objection is over a perceived inconsistency in our opinion. The dissent asserts that our holding that there must be some differentiation between multiple counts is inconsistent with our holding that child abuse indictments need not always point to specific times and locations. The dissent maintains that "the only reason that there are no distinctions made within each set of 20 counts is because the defendant was not provided with the exact time and place specifications." This is simply faulty logic. Requiring some minimal differentiation between criminal counts is quite different from requiring "exact time and place specifications." Certainly, this opinion does not require that indictments allege the date, hour, and precise location of crimes. Instead, the defendant, the judge, and the jury must be able to tell one count from another.

To be sure, differentiation will often require reference to date ranges or time ranges or certain locations or certain actions. But, differentiation does not require overly-burdensome precision. Notably, each and every case cited by the dissent demonstrates that differentiation is quite possible without exacting specificity. In *Madden v. Tate*, 1987 WL 44909 (6th Cir. 1987), the indictment at issue, as clarified by the bill of particulars, used different wide time frames, different generic locations, and different sexual offenses to distinguish among the three counts. Likewise, in *Fawcett v. Bablitch*, 962 F.2d 617, 619 (7th Cir. 1992), the defendant was charged with two differentiated sexual offenses. Finally, in *State v. Mulkey*, 560 A.2d 24 (Md. 1989), the indictment demonstrates that even when a defendant is charged with twelve counts of the same crime, the counts can be distinguished from one another. In *Mulkey*, the defendant was charged with four counts of abuse that occurred in the summer of 1982, four counts in the summer of 1983, and four counts in the summer of 1984. Even the four charges within each summer were distinct. *See State v. Mulkey*, 534 A.2d 1374, 1376 & n.1 (Md. Ct. App. 1988), *overruled by State v. Mulkey*, 560 A.2d 24 (Md. 1989). As the lower court opinion indicates, each count was separable:

> Counts 2, 6, and 10 allege that Mulkey committed a sexual act upon James S. Counts 3, 7, and 11 alleged that Mulkey committed a different sexual act upon James S. Counts 4, 8, and 12 alleged that Mulkey committed a sexual act upon another victim, Marilyn S. Counts 5, 9, and 13 allege that Mulkey committed a different sexual at upon Marilyn S.

*Id.* at n.1. While the indictment did not allege specific dates, times, and locations, it did ensure differentiation among the otherwise similar counts. After an extensive search, we cannot find one court that has actually considered the issue and upheld the use of multiple identically-worded and factually-indistinguishable counts in this context or any other.

The dissent urges that we should find the Ohio Court of Appeals treatment of this case a reasonable application of constitutional law, as "no Supreme Court case has ever found the use of identically worded and factually indistinguishable indictments *unconstitutional*." (Post. at 11) (emphasis in original). Yet state courts do not have free reign simply because the Supreme Court has not decided a case on the exact claim at issue. Instead, the "clearly established Federal law" relevant under AEDPA encompasses "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."

*See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The Supreme Court has established a clear and consistent path for the courts regarding the due process sufficiency of criminal charges, and the Ohio Court of Appeals has strayed so far from that path as to warrant habeas relief. *See id.* at 72.

We agree with our dissenting colleague that courts must be aware and responsive to the unique problems of child abuse cases. We agree that adopting hard-and-fast pleading rules would be a disservice in this area of the law. But, these difficulties do not permit us to simply abandon the rule of law because we find a crime especially abhorrent. Valentine's trial was radically disconnected from some core values of our legal system. Neither the prosecutor, the defense, the court, nor the jury ever had any idea of what incidents formed the bases of the forty counts. There are violations of ordinary rules of notice, duplicity, multiplicity, jury unanimity, double jeopardy, and sufficiency of the evidence. He was sentenced to forty consecutive life sentences based on a child's round-number, guesstimate as to how many times she was assaulted.

There is little indication that this ruling will "severely hamper" the prosecution of crimes of abuse. Even in this case, we have upheld the two counts that gave notice of separate crimes, and the sentence is two consecutive life sentences, an extremely harsh punishment. Nothing in this opinion limits sexual abuse prosecutions to so-called "exceedingly narrow and precise charges." It expressly rejects Valentine's challenge on that ground. The Constitution does, however, demand that if a defendant is going to be charged with multiple counts of the same crime, there must be some minimal differentiation between the counts at some point in the proceeding. Without such differentiation, these prosecutions would reduce to nothing the constitutional protections of the Fifth and Fourteenth Amendments.

We, therefore, affirm the District Court's judgment regarding the carbon-copy charges in Counts 2-20 and Counts 22-35, reverse the District Court's judgment regarding Valentine's convictions on Count 1 and Count 21, and remand to the District Court with instructions to grant the writ unless Ohio vacates the inappropriate convictions and re-sentences Valentine in accordance with this opinion.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part. I concur in Parts I, II, and IV of the majority opinion insofar as the opinion reverses the district court as to Count 1 (the first rape count) and Count 21 (the first felonious-sexual-penetration count) by concluding that those two counts are nonduplicative. My disagreement with the majority comes with respect to Part III of its opinion, which concludes that the district court was not in error when it granted Valentine's petition for habeas corpus relief on Counts 2-20 and 22-35. Although the majority has properly acknowledged that this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA), which increased the deference that federal courts must give to state-court decisions, the Supreme Court has cautioned against simply "recit[ing] this standard [and then evaluating] respondent's claim de novo rather than through the lens of § 2254(d) . . . ." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

The majority first concludes on the merits that Valentine's due process rights were violated because the indictment in question failed under *Russell* to appraise Valentine of what he must be prepared to meet. But the majority cites no authority for its conclusion that the use of multiple identical counts in instances of child abuse failed to sufficiently apprise Valentine of the charges he faced. The majority further claims that it "cannot find one court that has actually considered the issue and upheld the use of multiple identically-worded and factually-indistinguishable counts in this context or any other." Maj. Op. at 9. Although I do not dispute the majority's research, I find equally telling the fact that no Supreme Court case has ever found the use of identically worded and factually indistinguishable indictments *unconstitutional*.

To the contrary, many courts have found the use of indictments that are vague as to the time and place of multiple offenses to withstand constitutional attack. The defendant in *Madden v. Tate*, No. 85-3061, 1987 WL 44909, at *1 (6th Cir. Sept. 30, 1987) (unpublished), for example, was convicted of sexually abusing his eight-year-old granddaughter and 11-year-old son. In rejecting Madden's argument that the indictment failed to provide him with sufficient notice of the charges to enable him to prepare his defense, the court concluded that the

> [f]ailure to specify the precise dates upon which the alleged crimes occurred does not deprive the defendant of his constitutional right to due process where time is not of the essence of the offense and where the dates used are not picked arbitrarily . . . . Neither is this a case where the prosecution deliberately refused to provide dates; the young victims were not in fact able to provide dates, and the time frames provided were based upon their best recollections. There was no denial of due process.

*Id.* at *3. *Cf. Fawcett v. Bablitch*, 962 F.2d 617 (7th Cir. 1992) (rejecting a defendant's argument that his conviction on two counts of sexual misconduct over a six-month period provided him with insufficient information to mount a defense); *State v. Mulkey*, 560 A.2d 24, 30 (Md. 1989) (rejecting a defendant's argument that his conviction on twelve counts of third-degree sexual offense—some of which were duplicates of each other—violated his right to present a defense, and noting that "[b]ecause the charges involved multiple sexual offense violations, the child-victims were unable to specify the exact dates or times of the acts. [The defendant] was apprised of the continuing nature of the offenses such that his defense was not prejudiced.").

I acknowledge that none of these cases has gone to the extent of finding constitutionally sound 20 or more factually indistinguishable counts. But I note that the linchpin of the majority's analysis in this case is based upon the fact that "within each set of 20 counts, there are absolutely no distinctions made." Maj. Op. at 5. Just two sentences earlier, however, the majority concedes that "[t]he problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places." *Id.* I frankly find these two statements contradictory. In effect, the only reason that there are no distinctions made within each

set of 20 counts is because the defendant was not provided with the exact time and place specifications. Yet, based on the authorities cited above, I can discern no constitutional requirement that exact time and place specifications be provided within such an indictment. This holds true whether the number of identical counts be two or twenty.

In support of its position, the majority cites *Parks v. Hargett*, No. 98-7068, 1999 WL 157431 (10th Cir. Mar. 23, 1999) (unpublished), in which the petitioner was charged with three counts of molesting a six-year old girl. These counts, the petitioner claimed, were so vague that he was "unable to adequately prepare a defense." *Id.* at *1. The court ultimately rejected the petitioner's arguments, but noted in dicta that "[w]here the statutory definition of an offense employs generic terms, it is not sufficient to charge the offense in the same terms employed by the statute; the indictment must 'descend to particulars.'" *Id.* at *3 (quoting *United States v. Sullivan*, 919 F.2d 1403, 1411 (10th Cir.1990)). This discussion, however, applied not to the adequacy of the time and place specifics provided to the defendant (as is the case here), but with the *specificity of the charge*. Valentine has conceded that the indictment in question is specific enough to satisfy the *Russell*'s first requirement that "the indictment contain[] the elements of the offense intended to be charged." *Russell*, 369 U.S. at 764. I therefore find the majority's reliance on this discussion in *Parks* puzzling.

Less puzzling and more disturbing in my opinion is that prohibiting the use of multiple identical charges in a single indictment would severely hamper a state's ability to prosecute crimes where a young child is both the victim and the sole witness. Young children often make difficult, forgetful, or uncooperative witnesses in abuse cases. Their limited understanding, combined with a subconscious desire to "forget" the abuse, often makes them vague and unretentive. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987) ("Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent."); *State v. Mundy*, 650 N.E.2d 502, 515 (Ohio Ct. App. 1992) ("In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time.").

Utilizing children as witnesses is widely understood by the courts and legal observers to be the only mechanism by which many sexual offenders may be brought to justice. Because of the nature of the crime, the sexual abuse of children typically occurs in private, in the residence, and away from other adults. *See generally* Bureau of Justice Statistics, Sexual Assault of Young Children As Reported to Law Enforcement: Victim, Incident, and Offender Characteristics 5-7 (July 2000), *available at* http://www.ojp.usdoj.gov/bjs/pub/pdf/saycrle.pdf (noting that 77 percent of juvenile sexual assaults take place in a private residence, as opposed to 55 percent of adult assaults). Corroborating physical evidence might also be unavailable because the offender has verbally threatened the child, as opposed to using actual force. And, because a child often delays in reporting the abuse, visible injuries might not be documented. Under a rule restricting prosecutions to exceedingly narrow and precise charges, a sex-abuse charge would presumptively be limited to a single instance of abuse, despite clear evidence of multiple occasions, unless the child can remember the specific time and place details for each occurrence. Such an outcome is contrary to judicial precedent and is not constitutionally required.

I also believe that the majority's holding unnecessarily substitutes a rigid rule for what should properly be the jury's factfinding powers. The majority notes that Valentine was "sentenced to forty consecutive life sentences based on a child's round-number, guesstimate as to how many times she was assaulted." Maj. Op. at 10. But to characterize the child's testimony as simply a "guesstimate," as opposed to reliable evidence of the multiple offenses, is a judgment call best left to the jury. In fact, the jury in the present case weighed and considered all of the available facts when it determined that Valentine was guilty of forty (not one, not two, not twenty) counts of rape or forcible penetration. If Valentine had sought to rebut any of the charges against him—with information, for example, about his daily whereabouts or concerning his relationship with the little girl—he was free to present it to the jury. The jury would have

then been able to consider the information as it weighed the evidence in determining the number of charges that it believed was established beyond a reasonable doubt. But creating a per se rule that unduly narrows the number of identical charges that may be filed, as the majority has done, takes away the jury's power to determine whether multiple crimes have occurred. The effect of failing to recall time and place details is a matter appropriately assessed by the jury, not by a per se rule.

Furthermore, the majority does not articulate why, in its opinion, the decision of the Ohio Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. In its discussion, the state appellate court applied existing Ohio law on the subject of child victims, much of which weighed the policy considerations involved in a *Russell* analysis. The Ohio Court of Appeals, for example, observed that "[i]t is well-established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses cannot be determined with specificity," citing *State v. Daniel*, 647 N.E.2d 174, 180 (Ohio Ct. App. 1994). It also noted that, in the present case, the victim "is an eight-year old child who may not be able to remember exact dates and times, considering that the same conduct occurred during a ten-month period of time and continued until she reported it to her teacher." Ultimately, the court's decision turned on the fact that the victim was a young child. Because *Russell* dealt with individuals convicted of refusing to answer questions posed by a congressional subcommittee, not with the special public policy concerns involved where a young child is both the victim and the sole witness, I see nothing in the state-court opinion that is an unreasonable application of the *Russell* standard.

The Ohio Court of Appeals further observed that "Valentine has failed to demonstrate any material detriment to his ability to defend himself resulting from the lack of specificity of the dates listed in the indictment." This conclusion is the key to the case. Under Ohio Supreme Court precedent, "where the inability to produce a specific time or date when the criminal conduct occurred is . . . without material detriment to the preparation of a defense, the omission is without prejudice, and without constitutional consequence." *State v. Sellards*, 478 N.E.2d 781, 785 (Ohio 1985). The majority, however, fails to explain why this conclusion of the Ohio Court of Appeals is contrary to, or involves an unreasonable application of, clearly established federal law. Requiring that an indictment utilizing multiple identical charges present a material detriment to the defendant in order to be constitutionally significant is hardly contrary to existing Supreme Court caselaw.

*Russell*'s last requirement that "the record show[] with accuracy to what extent [the defendant] may plead a former acquittal or conviction," 369 U.S. 764 (citations omitted), has been commonly interpreted to act as a restriction on indictments that might raise double jeopardy concerns. But contrary to the majority's conclusion, this prong of *Russell*, read literally, does not suggest a restriction on identical charges within a single indictment. Instead, the language clearly protects the defendant *in the future*, so that the current record may demonstrate "with accuracy" a "former acquittal or conviction." The *Russell* double jeopardy test thus serves to protect defendants from having a confusing record of charges used against them at a later time. It does not, as the majority suggests, serve to protect defendants from multiple identical counts contained within the same indictment.

Very few cases have expounded on *Russell*'s last requirement, and the one relied on by the majority is distinguishable from the present case. This case is *Isaac v. Grider*, No. 98-6376, 2000 U.S. App. LEXIS 9629, at *1 (6th Cir. May 4, 2000) (unpublished), where the public policy concern highlighted by *Russell* is clearly paramount. In that case, as in this one, the defendant was charged with multiple "cookie cutter" counts of sexual abuse of minors. But, unlike Valentine, Isaac was acquitted on several counts through a directed verdict prior to his trial. Which of the charges remained for consideration by the jury was therefore unclear. In contrast, Valentine was not acquitted on any of the charges against him, so he was not at risk of being tried twice for the same offense. The dangers present in Isaac's trial were therefore conspicuously absent in Valentine's.

In addition, the state has stipulated that Valentine will not be charged in the future for any conduct taking place during the time period covered by the present case. This means that Valentine will never be

at risk of being tried twice for the same incident, which I believe cures any double jeopardy problem. The majority argues that such a view suggests that "placing a defendant at risk of double jeopardy is acceptable so long as the prosecution wins and is pleased with the verdict and sentence." Maj. Op. at 7. To the contrary, the risk of double jeopardy is nonexistent if the state is legally bound to never again prosecute. So any violation that may have occurred here is cured by the state's stipulation, regardless of the motivations involved. *See Fawcett*, 962 F.2d at 618-19 ("The prosecutor took care of the [due process requirements] by stipulating that Fawcett would be immune from further prosecution for any sexual contact with [the victim] during the entire six-month period.") The majority, moreover, cites no authority for its conclusion that the state's stipulation fails to cure the potential for a double jeopardy problem.

In sum, I do not believe that Valentine was insufficiently appraised of the charges against him or that he faces a risk of double jeopardy. I also fail to see where the analysis by the Ohio Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. Decades of existing caselaw have established the precedent that, when it comes to child victims, indictments might of necessity be vague as to the details of time and place. This does not mean, however, that they are constitutionally deficient. To the extent that this is a case of first impression, there is no authority to support the finding that the Ohio Court of Appeals unreasonably applied existing Supreme Court precedent. I therefore believe that we should reverse the district court's granting of an unconditional writ of habeas corpus and remand with instructions to dismiss Valentine's habeas petition in its entirety.