{¶ 72} I respectfully dissent from the majority opinion's disposition of this case. In my view, the record reflects the trial court abused its discretion in failing to permit full access to the victim's diary to the defense. Therefore, I would sustain appellant's first assignment of error and reverse his convictions on that ground; rendering his remaining arguments moot.
 {¶ 73} My reasons for this view are several, but are summarized by the observation that the record of this case does not indicate exactly why appellant was charged in the indictment specifically with five counts of rape, thirty counts of gross sexual imposition, and thirty-five counts of kidnapping. Certainly, as the majority opinion acknowledges, the victim's testimony provided no correlation to the number *Page 25 
of counts. Additionally, the jury, not surprisingly, was confused by the discrepancies in her testimony.
 {¶ 74} The record reflects many discrepancies in the victim's testimony. For instance, she testified on direct examination she did not cry out during many of the incidents of appellant's sexual abuse because she was "scared" to do so. She further stated she did not tell her stepmother about the abuse because she thought her stepmother would not believe her.
 {¶ 75} This testimony, however, did not jibe with other testimony in which she described incidents when she noisily resisted appellant's sexual abuse, even if her stepmother were present in the house. Moreover, the victim did not explain why, during the summer before her high school freshman year, i.e., 2004, when she went to Pittsburgh and was away from appellant, she neither informed her other family members about appellant's sexual abuse nor made any protest about returning to Cleveland.
 {¶ 76} The record reflects that in presenting the state's case, the prosecutor conducted a direct examination of the victim using almost exclusively leading questions. The prosecutor also showed the victim her diary, ostensibly to "refresh her recollection" concerning specific dates.
 {¶ 77} After the victim's direct examination concluded, defense counsel informed the court that the prosecutor had not only refused to provide written summaries of what the diary contained, but would not permit any copying or note-taking, and made it available for inspection only for an hour. Under these *Page 26 
circumstances, how was he properly to determine whether the diary had any exculpatory value?
 {¶ 78} Pursuant to Crim.R. 16(B)(1)(c), the prosecution has a duty to provide exculpatory material to the defense. The prosecutor used the diary during her direct examination of the victim. Defense counsel, however, not only was severely limited in obtaining access to the diary, but the trial court refused to order the document to be produced. This constitutes an abuse of the court's discretion.
 {¶ 79} The trial court submitted into the record as a court's exhibit under seal an entire copy of the diary. A review of the entries demonstrates a wealth of items with which, if defense counsel had been permitted the time to fully review the diary, he could have challenged the victim's credibility.
 {¶ 80} For one thing, her entries reveal the victim is a very intelligent young woman who used an extensive vocabulary. This raises the question of why, in describing an incident of sexual abuse during her direct examination, she would call appellant's penis a "genital."
 {¶ 81} Additionally, the victim estimated appellant's sexual abuse occurred "hundreds of times." Her diary mentions only two. If the molestation were as pervasive as the victim described, why only two referrals to incidents over the course of the entire summer? Indeed, the victim testified that she did not always make entries in that particular diary because of schoolwork, but she had no schoolwork over the summer. *Page 27 
 {¶ 82} The diary also indicates the victim was very angry at her stepmother, but seemed almost dismissive of appellant. The victim not only expressed little respect for him, she wrote that he did not frighten her. She further expressed contempt for female classmates who had reputations for promiscuity, without displaying any angst about her own situation as an alleged victim.
 {¶ 83} I think it is important to note in considering appellant's first assignment of error a fact that is highly relevant to his argument, viz., that his right to present a defense was compromised by his lack of access to the victim's diary. The majority opinion fails to mention this fact, but the record reflects that, during deliberations, the jury presented the court with two separate communications.
 {¶ 84} The jury first was concerned as to whether an agreement on "guilt on all 3 charges" was "double charging [appellant] for the same crime," and whether it was "excessive." Next, the jury wanted the court to "show [them] the two pages of the journal where [the victim] talked about molestation." Neither of these communications was noted in the transcript of trial; the court simply hand-wrote a response and sent the message back. Thus, the record does not reflect whether defense counsel ever knew of these communications.
 {¶ 85} Cases such as this one, in which the victim is a minor, and in which the record reflects evidence which support no more than a few identifiable instances of sexual abuse, present difficulties of proof for the prosecution, but even more difficulties of rebuttal for the defense. State v. Hemphill, Cuyahoga App. No. 85431, 2005-Ohio-3726, citing Valentine v. Konteh (6th Cir. 2005), 395 F.3d 626. *Page 28 
 {¶ 86} Under the circumstances, the trial court owes the defendant full access to potentially exculpatory evidence. Since the record of this case demonstrates the trial court compromised appellant's right to present a full defense by limiting his access to the victim's diary, I would sustain appellant's first assignment of error.
 {¶ 87} In my view, appellant's convictions should be reversed, and this case remanded for a new trial. *Page 1