NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0502n.06

No. 13-3466

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 10, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| **DARRELL W. BRUCE,** | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| | ) | |
| **ROBERT WELCH, Warden,** | ) | **O P I N I O N** |
| | ) | |
| **Respondent-Appellee.** | ) | |
| | ) | |

BEFORE: NORRIS, CLAY, and KETHLEDGE, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Darrell Bruce appeals the denial by the district court of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. In 2008, a Cuyahoga County, Ohio jury convicted him of two counts of rape, Ohio Rev. Code § 2907.02(A)(1)(b) (sex with a person less than thirteen); three counts of gross sexual imposition, Ohio Rev. Code § 2907.05(A)(4) (sexual contact with a person less than thirteen); and one count of not reporting a change of address due to his status as a prior sex offender, Ohio Rev. Code § 2950.05. The sexual offenses involved his minor step-daughters. The court of common pleas sentenced petitioner to two consecutive life terms for the rape convictions. In addition, it sentenced him to consecutive terms of five years in prison for the gross sexual imposition offenses and a term of five years of incarceration for his failure to register.

1

When it denied his petition for a writ of habeas corpus, the district court also declined to issue a certificate of appealability ("COA"). However, this court granted a COA on the sole question of whether the counts of the indictment charging him with gross sexual imposition violated his right to due process because they provided him with insufficient information about the nature of the offense and thereby compromised his ability to mount a defense. *See* Sixth Circuit Order, Oct. 8, 2013 at 3.

## I.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1224, the findings of the state court are "presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The last reasoned state-court opinion in this case was issued in 2009 by the Court of Appeals of Ohio, Eighth District. *State v. Bruce*, 2009 WL 4170493 (Ohio Ct. App. Nov. 25, 2009); (Page ID 774.) It set out the underlying facts as follows:

> During the trial, the state proved that Bruce, an admitted sex offender, raped the nine- and seven-year-old daughters of his then wife E.B. He raped them separately over a period of four years according to their respective testimony. One victim, N.W., was fourteen years old at the time of trial and nine years old when the rapes began. She testified that shortly after her mother began dating Bruce in 2001, she and her sister D.W., 13 years old at the time of trial, would stay at Bruce's house after school, until their mother came to pick them up after work. D.W. was 7 years old at the time.
>
> Bruce would rape N.W. approximately two out of five school days. The incidents generally occurred when D.W. was taking a nap or was in the front room. Bruce continued to rape N.W. after they began living with him, and continued after his marriage to her mother.
>
> N.W. further testified that the rapes occurred at every place the family resided. N.W. always resisted, but Bruce would eventually overpower her because of his size. . . . N.W. was afraid to disclose the rapes because she did not want others to know, and because Bruce was a minister, she feared no one would believe her.

2

In 2007, after Bruce was no longer living with the family, N.W. and her mother were at Golden Corral restaurant when she decided to talk about the rapes. N.W. told her mother that Bruce had been molesting and raping her for a number of years.

D.W. testified that at first, Bruce began touching her on the buttocks. D.W. was unaware this was inappropriate behavior. Later, when her mother and sister were away, Bruce would rape her. Bruce would rape her on an ongoing basis at each place where the family resided.

At trial, D.W. related several instances of rape, including one occasion when Bruce instructed her to take off her clothes as if she was going to take a shower. D.W. proceeded to the bathroom, took off her clothes and was about to enter the shower, when Bruce summoned her to his room. On that day, he raped her.

. . . .

It was after Bruce moved out that D.W. and N.W. disclosed more about the incidents to their mother. D.W. had not previously disclosed the attacks because Bruce had instructed her not to tell her mother.

*Bruce*, 2009 WL 4170493, at *1–2 (footnote omitted); (Page ID 776-78). At trial, the victims' mother, E.B., testified that petitioner disclosed to her "that he had been previously convicted of sexually assaulting his biological daughter, that he had been imprisoned, and had been labeled a sexual offender." *Id.* at *2; (Page ID 779).

In 2007, a grand jury returned a seven-count indictment: two for the rape of N.W.; one for the rape of D.W.; three for gross sexual imposition directed at D.W.; and one for failing to notify the county sheriff of a change of address as required. The jury returned guilty verdicts on every count except the rape of D.W. Although not at issue in this appeal, the sexual assault offenses all included a "sexually violent predator" specification, Ohio Rev. Code § 2941.148. However, the Ohio Court of Appeals determined that this specification did not apply to petitioner

3

and ordered him re-sentenced.[1]  Petitioner's further attempts to reverse his convictions in the state courts met with no success.

The only issue certified on appeal concerns the three counts of gross sexual imposition against D.W. (referred to as Jane Doe II in the indictment).  The three counts are essentially identical.  They list the date of offense as November 20, 2001, through October 31, 2005.  They charge that defendant "had sexual contact with Jane Doe II, not his spouse, whose age at the time of the said sexual contact was under 13 years, whether or not the offender knew the age of Jane Doe II, to-wit: d.o.b. November 20, 1994."

The question before us is whether the Ohio Court of Appeals unreasonably applied clearly established law when it determined that petitioner received constitutionally adequate notice of the charges against him.  For the reasons that follow, conclude that it did not, and deny Petitioner's habeas petition.

## II.

We apply a highly deferential standard of review to habeas petitions filed after the passage of AEDPA.  *Miller v. Stovall*, 742 F.3d 642, 645 (6th Cir. 2014).  When, as here, a state court has adjudicated a claim on the merits, we will not grant a writ unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The Supreme Court has recently reminded us of this demanding standard in these terms:

> Recognizing the duty and ability of our state-court colleagues to adjudicate  claims of constitutional wrong, AEDPA erects a formidable barrier to

---

[1]  The sentence mentioned earlier is the one imposed after remand.

4

federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–787 (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." *Id.*, at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.* (internal quotation marks omitted).

*Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013).

On direct appeal, petitioner argued that all six sexual assault counts should be dismissed because the dates were imprecise, making it difficult for him to defend against them. Each of the counts alleged that the crime occurred sometime between November 20, 2001, and October 31, 2005. The Ohio Court of Appeals resolved the claim this way:

> In the sixth assigned error, Bruce argues the trial court should have dismissed Counts 1 through 6 because of the vague dates and date range. This assigned error lacks merit.
>
> Initially, we note the indictment recited the language for the definition of rape and gross sexual imposition as defined in the relevant statutes; therefore, the indictment properly apprised Bruce of the charged offenses. We conclude the indictment was not invalid for failure to state the exact date that the offenses were committed. Specificity as to the time and date of an offense is not required in an indictment.
>
> Further, under R.C. 2941.03, "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." Consequently, an indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The state's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged.
>
> Here, both victims were under ten years of age when the rapes began. Both victims testified that Bruce raped them at each and every address where the parties resided. E.B. testified that she and her daughters lived with Bruce at two locations in Cuyahoga County and two locations in Lorain County. E.B. testified as to the dates that the parties resided at the respective addresses.

5

Thus, Bruce had ample information regarding the date range of the offenses and could adequately prepare a defense. Accordingly, we overrule the sixth assigned error.

*Bruce*, 2009 WL 410493, at *5–6 (footnotes omitted); (Page ID 785-87).

As is clear from the Ohio Court of Appeals' reasoning, petitioner limited his "vagueness" argument to the four-year time frame of the charges. The state court did not cite to federal law in resolving this question. In the habeas proceedings below, however, petitioner expanded his vagueness argument to include federal due process considerations. Specifically, the Fourteenth Amendment's Due Process Clause incorporates the right to fair notice embodied in the Sixth Amendment. *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). The magistrate judge to whom this matter was referred noted in his report and recommendation that the Constitution does not require an indictment to issue in state-court criminal proceedings as long as sufficient notice of the charges is given in some other manner. *Bruce v. Welch*, No. 1:10-cv-2894, 2012 WL 6861502, at *14 (N.D. Ohio Feb. 17, 2012); (Page ID 1980) (citing *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)). However, the Due Process Clause of the Fourteenth Amendment requires fair notice of criminal charges sufficient to allow a defendant to prepare an adequate defense. *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006). "To pass constitutional muster, an indictment must meet a two-pronged test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *Bruce*, 2012 WL 6861502, at *14; (Page ID 1980) (quoting *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)).

6

The magistrate judge assessed the notice requirement in these terms:

> Bruce was fairly informed of the charges, and had sufficient information to adequately prepare a defense. He was told of the nature of the conduct alleged, the time period within which it allegedly occurred, and who he was alleged to have harmed. Further, through the course of discovery and the trial, he was informed of the precise location of certain alleged conduct, and a more detailed specification of the time periods in which each count was alleged to have occurred. . . . In fact, Bruce's primary defense was his denial that any inappropriate conduct ever occurred with the children. Nothing other than the nature of the conduct and the identity of the victim was required in order for him to fashion and assert this defense.

*Id.* at \*17 (Page ID 1982–83.) The district court adopted the report and recommendation. We review the legal reasoning of the district court de novo. *Peoples v. Lafler*, 734 F.3d 503, 509 (6th Cir. 2013).

Petitioner's argument on appeal largely hinges on the applicability of *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005) to his situation. In *Valentine*, which also stemmed from events in Cuyahoga County, defendant was charged with twenty "carbon copy" counts of rape and twenty counts of felonious sexual penetration of his eight-year-old step-daughter. *Id.* at 629. The victim was the only person to testify and she told the jury that defendant forced her to perform fellatio on "about twenty" occasions and digitally penetrated her "about fifteen" times. The jury returned guilty verdicts on all forty counts.

The Ohio courts affirmed with the exception of five of the penetration counts—presumably because the victim testified to fifteen, not twenty, instances. Defendant sought a writ of habeas corpus, which the district court granted as to all counts of conviction. Valentine contended that the "carbon copy" counts of the indictment violated both his double jeopardy and due process interests: first, the time frame when the charged offenses allegedly occurred was too long; second, the crimes themselves were undifferentiated and therefore impossible to defend.

7

This court agreed with the latter proposition and reasoned that, "[a]s the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself." *Id.* at 633. "[D]ue to the failure to differentiate, Valentine could only successfully defend himself against some of the charges by effectively defending himself against all of the charges." *Id.* at 634. "[T]he constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts." *Id.* at 636. We also held that defendant's double jeopardy rights were infringed (an issue not before us in this appeal). *Id.* at 635. However, rather than affirm the grant of the writ as to all counts, this court concluded that "in view of the testimony and the indictment language, one of the child rape and one of the penetration counts can be sustained." *Id.* at 628.

Germane to this appeal is the manner in which *Valentine* dealt with the contention that the time frame charged was too long:

> This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. *See Isaac v. Grider*, 2000 WL 571959 at *5 (four months); *Madden v. Tate*, 1987 WL 44909, at *1-*3 (6th Cir. 1987) (six months); *see also Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir. 1992) (six months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (three years); *Parks v. Hargett*, 1999 WL 157431, at *4 (10th Cir. 1999) (seventeen months). Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved. The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse. Valentine's claims regarding the lack of time- and date-specific counts therefore fail.

*Id.* at 632.

Where does this leave us? The warden contends that neither *Russell* nor *Valentine*, the two cases primarily relied upon by petitioner, constitute "clearly established federal law" as

8

defined by AEDPA. 28 U.S.C. § 2254 (d)(1) (clearly established federal law to be "determined by the Supreme Court of the United States"): *Valentine* is a Sixth Circuit, not a Supreme Court decision; *Russell* involves the Fifth, not the Sixth Amendment. WE need not opine on this issue because, even if we assume that *Valentine* and *Russell* represent clearly established federal law, the facts of petitioner's case are sufficiently distinguishable from that authority. First, as just quoted, *Valentine* supports the conclusion that the four-year time frame charged in the indictment does not conflict with constitutional notice requirements. *Id.* at 632. With respect to whether the charges of gross sexual imposition were sufficiently distinguishable to allow petitioner to defend against them, we note, as did the Ohio Court of Appeals and the magistrate judge below, that testimony at trial supported the conclusion that petitioner sexually assaulted D.W. at each of the four locations where he resided with the victims. We are not limited to assessing the indictment alone in assessing notice. Pursuant to *Valentine*, we may also review the evidence at trial to determine whether the notice requirements have been met. *Id.* at 634. That evidence supports the conclusion that petitioner was provided with constitutionally adequate notice of the charges against him. In short, the Ohio Court of Appeals' decision was not an "unreasonable" application of established federal law as defined by AEDPA.

### III.

The judgment is **affirmed**.

9