NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0650n.06

No. 13-3280

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 20, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSEPH COLES, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| KEITH SMITH, Warden, | ) | OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:     GILMAN, GIBBONS, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.**  Joseph Coles, an Ohio inmate, appeals the district court's

denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Coles was convicted

by a jury on 43 counts of rape stemming from the sexual abuse of his step-daughter, S.D.,

between January 8, 2001 and July 5, 2004, when S.D. was over the age of thirteen.  Coles raises

two issues on appeal:  (1) whether the State violated his constitutional rights to notice and

protection from double jeopardy when it charged him with identical counts of rape alleging

undifferentiated misconduct over an extended period of time, and (2) whether the prosecutor's

remarks in closing argument violated his right to a fair trial.  For the reasons we explain below,

we AFFIRM the judgment of the district court.

## I. PROCEDURAL HISTORY

The State initiated the prosecution against Coles in March 2006 when a grand jury returned a 242-count indictment against him. The first 111 counts, which were alleged to have occurred between January 8, 1998 and January 7, 2001, when S.D. was not yet thirteen years of age, charged Coles with 37 counts of rape, 37 counts of gross sexual imposition, and 37 counts of kidnapping with sexual motivation specifications. The remaining 131 counts, which were alleged to have occurred between January 8, 2001 and July 5, 2004, after S.D. turned thirteen years of age, charged Coles with 43 counts of rape, 43 counts of gross sexual imposition, 43 counts of kidnapping with sexual motivation specifications, and two counts of child endangerment.

Coles moved for a bill of particulars. The State filed one, naming the victim, giving her date of birth, and specifying the communities where the crimes occurred. Coles then moved for a more specific bill of particulars. The State did not respond to the second motion, and the trial court did not rule on it. Coles did not request a ruling on the second motion or move to dismiss the indictment. The case proceeded to jury trial on September 18, 2006.

At the close of its case-in-chief, the State *nolle prosequied* 40 counts, including all of the kidnapping counts charged in the time period before S.D. turned thirteen years old. With the agreement of the defense, the State narrowed the dates charged in other counts. The remaining counts were then renumbered.

After hearing the testimony of several witnesses, including 18-year-old S.D., her mother, and Coles, the jury acquitted Coles of all charges relating to the time period before S.D. reached thirteen years of age, as well as all counts of kidnapping and child endangerment for the period after she turned thirteen. The jury convicted Coles of 43 counts of rape and 43 counts of gross

sexual imposition that occurred after S.D. turned thirteen years of age. The trial court imposed a sentence of 210 months in prison and, after a hearing, classified Coles as a sexual predator.

On direct appeal, the Ohio Court of Appeals held that the trial evidence was insufficient to support the convictions for gross sexual imposition, prompting a reversal and remand with an instruction to vacate those convictions and sentences. *State v. Coles*, No. 90330, 2008 WL 4436872, *3–4 (Ohio Ct. App. Oct. 2, 2008). Because gross sexual imposition is a lesser-included offense of rape, the court reasoned, the prosecution could sustain convictions for both crimes only if the conduct supporting each charge of rape was separate from the conduct supporting each charge of gross sexual imposition. *Id.* at *3. S.D. testified that Coles raped her multiple times after she turned thirteen years of age, but she did not identify any separate sexual conduct to support the charges for gross sexual imposition. *Id.* at *3–4. The court affirmed the rape convictions and sentences, ruling that the identical counts in the indictment did not violate the petitioner's rights to notice and protection from double jeopardy, and the prosecutor's remarks during closing argument did not deny him a fair trial, particularly in light of the overwhelming evidence against him. *Id.* at *4–8, *10–12. In March 2009 the Ohio Supreme Court declined to take jurisdiction of the appeal for lack of a substantial constitutional question.

Coles filed a § 2254 habeas petition in federal court with the assistance of counsel in March 2010, alleging six grounds for relief. A magistrate judge issued a lengthy Report and Recommendation suggesting that the district court should grant habeas relief on the claim that the identical counts of the indictment violated the petitioner's rights to notice and protection from double jeopardy, but that the court should deny relief on all other grounds. Applying this court's decision in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), the magistrate judge determined that S.D.'s testimony sufficiently distinguished only six separate incidents of rape,

and concluded that the indictment and the trial evidence failed to give Coles proper notice so that he could defend the remaining rape counts. Finding a violation of the petitioner's due process rights under *Valentine*, the magistrate judge recommended that the district court grant relief in part by directing the State to vacate the convictions and sentences on 37 of the 43 counts of rape, or the court should grant the writ. The magistrate judge found that comments made by the prosecutor during closing argument were improper, but the remarks were not so flagrant as to deny Coles a fair trial.

Both Coles and the State filed objections to the Report and Recommendation. The district court adopted in part and rejected in part the Report and Recommendation and denied the habeas petition. The district court declined to apply *Valentine* because "clearly established Federal law" refers to relevant Supreme Court precedent, not circuit court opinions, citing *Renico v. Lett*, 559 U.S. 766, 778–79 (2010). The court also ruled that the decision of the Ohio Court of Appeals on the notice issue was not contrary to clearly established Supreme Court cases concerning a state defendant's Sixth Amendment right to be informed of the nature and cause of the accusation. The court also determined that the state appellate court's holding that any prosecutorial misconduct was harmless error was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

The district court granted Coles a certificate of appealability on these two claims. We have jurisdiction of the appeal under 28 U.S.C. §§ 1291 & 2253.

## II.  STANDARD OF REVIEW

In a § 2254 habeas proceeding, we review the district court's legal conclusions de novo, applying the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Moore v. Berghuis*, 700 F.3d 882, 886 (6th Cir. 2012). We may grant a habeas

petition on a claim that was adjudicated on the merits in state court if the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* This latter inquiry focuses "on whether the state court's application of clearly established federal law is objectively unreasonable," and "an unreasonable application is different from an incorrect one." *Id.*

When the statute refers to "clearly established Federal law as determined by the Supreme Court of the United States," it means "the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). We may not grant the writ simply because we conclude in our "independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Bell*, 535 U.S. at 694 (quoting *Williams*, 529 U.S. at 411). AEDPA imposes a standard that is highly deferential to state-court rulings, *Renico*, 559 U.S. at 773, and Coles must show that the state court's ruling on a claim "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

## III. ANALYSIS

We now take up the two issues before us: whether the state grand jury indictment charging multiple, identical counts of rape violated the petitioner's constitutional rights to notice and protection from double jeopardy and whether the prosecutor's comments in closing argument resulted in an unfair trial. Because the decision of the Ohio Court of Appeals on these issues was not contrary to controlling Supreme Court law or an unreasonable application of clearly established Supreme Court law, we affirm the district court's judgment denying habeas relief. 28 U.S.C. § 2254(d)(1).

## A. Indictment on multiple, undifferentiated counts did not violate petitioner's rights

The rape counts against Coles tracked the statutory elements of the offense, but they did not include particular facts to differentiate one alleged violation from another. This charging method, Coles argues, violated his due process right to notice of the charges against him and the right to protection from double jeopardy.

### 1. The Fifth and Sixth Amendments

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . ." U.S. Const. amend. V. A federal grand jury indictment may use the words of a statute to generally describe the offense, "but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (internal quotation marks omitted).

The Supreme Court has not applied to the States the Fifth Amendment's requirement that all prosecutions begin with a grand jury indictment. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Hurtado v. California*, 110 U.S. 516, 538 (1884); *Williams v. Haviland*, 467 F.3d 527, 531–34 (6th Cir. 2006). The Court has applied the Sixth Amendment to the States through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968); *In re Oliver*, 333 U.S. 257, 273 (1948). The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). A defendant "cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Jackson v. Virginia*, 443 U.S. 307, 314 (1979).

Under the Fourteenth Amendment, the States are "obliged to observe the prohibition against double jeopardy." *Watson v. Jago*, 558 F.2d 330, 338–39 (6th Cir. 1977) (citing *Benton v. Maryland*, 395 U.S. 784 (1969)). The concept underlying this guarantee is that the State "should not be allowed to make repeated attempts to convict an individual for an alleged offense." *Benton*, 395 U.S. at 796.

These federal constitutional principles are embedded in Ohio state law. A person charged in Ohio with a felony offense "is entitled to an indictment setting forth the 'nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution." *State v. Sellards*, 478 N.E.2d 781, 783 (Ohio 1985).

Our inquiry focuses on what was required to inform Coles of the "nature and cause of the accusation." In federal prosecutions where the Fifth Amendment applies, the Supreme Court has instructed that a grand jury indictment must contain the elements of the offense charged, it must sufficiently apprise the defendant of what he must be prepared to meet, and it must accurately demonstrate to what extent he may plead a former acquittal or conviction to avoid double jeopardy if subsequent proceedings are brought against him for a similar offense. *Hamling*, 418 U.S. at 117–18; *Russell v. United States*, 369 U.S. 749, 763–64 (1962). A federal indictment must provide more than conclusions of law; it must "descend to particulars" to inform the defendant of the facts alleged "with reasonable particularity of time, place, and circumstances." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875). Because the Supreme Court has not imposed the Fifth Amendment requirements for federal indictments on state charging instruments, our court has recognized that "there is no constitutional right in a state prosecution to a grand jury indictment with particular specificity." *Williams*, 467 F.3d at 534.

In *Valentine v. Konteh*, 395 F.3d at 631, this court applied *Russell*, *Hamling*, and *Cruikshank* to grant partial § 2254 habeas relief where an Ohio inmate challenged a state indictment similar to the one here. In that case the defendant was charged with sexually abusing his eight-year-old stepdaughter between March 1, 1995 and January 16, 1996. *Id.* at 629. A jury convicted him of "20 'carbon-copy' counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was identically worded." *Id.* at 628. The prosecution did not "distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial." *Id.* The only evidence of the number of offenses, the court noted, was the testimony of the child victim, "who described typical abuse scenarios and estimated the number of times the

abusive offenses occurred, e.g., 'about 20,' 'about 15,' or 'about 10' times." *Id.* This court ruled that the prosecution violated Valentine's rights to adequate notice and protection from double jeopardy, justifying a grant of habeas relief on all counts but two. *Id.* at 631, 639.

The court reasoned that, in "view of the testimony and the indictment language, one of the child rape and one of the penetration counts can be sustained but . . . the others must be set aside." *Id.* at 628. In other words, the court determined that the twenty child-rape counts charged one crime and the twenty penetration counts charged another crime. *Id.* at 629. Under this reasoning, Valentine received notice that he was charged with these two separate crimes during the time period specified in the indictment, *id.* at 628, "[b]ut he had no way to otherwise identify what he was to defend against in the repetitive counts and no way to determine what charges of a similar nature could be brought against him in the future if he were re-indicted." *Id.* at 628–29. Having been charged and convicted for "a generic pattern of abuse rather than for forty separate abusive incidents," the court held Valentine was entitled to partial habeas relief. *Id.* at 634.

The *Valentine* court based its legal reasoning on Supreme Court cases applicable to federal indictments, *Russell*, 369 U.S. at 763–64; *Hamling*, 418 U.S. at 117–18, and a few circuit cases, including *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959, at *4 (6th Cir. 2000), *DeVonish v. Keane*, 19 F.3d 107, 108 (2d Cir. 1994), *Fawcett v. Bablitch*, 962 F.2d 617, 618–19 (7th Cir. 1992), and *Parks v. Hargett*, 188 F.3d 519, 1999 WL 157431, at *3 (10th Cir. 1999). Two of those cases, *DeVonish* and *Fawcett*, were decided before AEDPA was enacted in 1996, while *Isaac* and *Parks*—and *Valentine* itself—were decided before the Supreme Court issued *Renico* in 2010. In light of *Renico*'s admonition that "clearly established Federal law" means relevant Supreme Court precedent and not circuit court opinions, *see Renico*, 559 U.S. at 778–

79, and because "no Supreme Court case has ever found the use of identically worded and factually indistinguishable [state] indictments *unconstitutional*," *Valentine*, 395 F.3d at 639 (Gilman, J., dissenting), we doubt our authority to rely on our own prior decision—*Valentine*—to "independently authorize habeas relief under AEDPA." *Renico*, 559 U.S. at 779. Rather, Coles must point to a Supreme Court case that would mandate habeas relief in his favor. He has not done so, and consequently, he has not demonstrated that the decision of the Ohio Court of Appeals rejecting his Sixth Amendment claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Renico*, 559 U.S. at 779.

Even if we may look to *Valentine*, we nonetheless deny habeas relief on this issue. In rejecting petitioner's direct appeal, the Ohio Court of Appeals observed that *Valentine* "did not rule out multiple-count indictments, finding instead that, '[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial.'" *Coles*, 2008 WL 4436872, at *4 (quoting *Valentine*, 395 F.3d at 634). The state appellate court reviewed its own case law, noting that in cases of sexual assault against children, "indictments need not state with specificity the dates of the alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged." *Id.* (quoting *State v. Yaacov*, No. 86674, 2006 WL 2902794, at *3 (Ohio Ct. App. Oct. 12, 2006)). Specific times and dates are not elements of the crimes charged, and many children cannot recall exact dates and times. *Id.* at *5. The difficulty in obtaining factual specificity is increased when the accused and the victim live in the same residence and the circumstances permit extended periods of abuse. *Id.* As a result, allowances for "reasonableness and inexactitude" must be made. *Id.* (internal quotation marks

omitted).  The state appellate court acknowledged, however, that there is an exception to the general rule if the failure to allege a specific date "results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified."  *Id.* (quoting *Yaacov*, 2006 WL 2902794, at *3).  In a case where the defendant, like Coles, denied any sexual conduct with the child victim, the lack of specificity in the indictment as to specific dates or places of the alleged abuse does not result in prejudice to the defense.  *Id.* at *6 (citing *State v. Ford*, No. 88236, 2007 WL 1559560 (May 31, 2007)).

The state appellate court further determined that "the State attempted to set forth the factual basis for each incident of molestation that occurred over a three and one-half year period."  *Id.* at *7.  The court pointed to the bill of particulars, which "identified the victim, her date of birth, and the places the crimes occurred."  *Id.*  In addition, the victim described the sexual abuse to the jury in specific factual detail:

> S.D. was able to recall when, where, and how the abuse occurred.  She testified that the abuse started in the summer of 2001 when the family was living on Clifton Avenue in Lakewood.  She testified that it was the summer between her seventh and eighth grade.  Although she did not remember how it started, she remembered the abuse occurred in the living room or her mother's room.  She was able to fully describe the house the family was living in and testified that Coles would wake her up at night when he was drunk and her mother was asleep. She testified that Coles would tell her to come into his room or would wake her up in the middle of the night and tell her to take her clothes off and he would either have his boxer shorts on or he would be naked and he would tell her to have sex with him.  She described that he would either get on top of her or make her get on top of him and put his penis in her vagina.  She also stated that Coles threatened her and told her that he would hurt her, kill her, break her neck, or hurt her mom if she told anyone about the abuse.  S.D. testified that the abuse happened "probably twice a week" for the year that she was living in Lakewood.
>
> In June of 2002, when the family moved to Parma with Coles, S.D. testified that the abuse intensified so that she and Coles were having sex "almost every day" and that the abuse would occur in the finished basement, in Coles' bedroom, or in her bedroom.  She stated that he made her have sex with him just

like he did in Lakewood and that the abuse usually occurred while her mother was at work or at night. Then S.D. became pregnant again in 2004 and Coles threatened her and told her to "blame it on one of [her] guy friends." S.D. had an abortion on April 2, 2004, and remembered the date because it was also her little brother's birthday.[1] S.D. testified that Coles made her start having sex with him one week after the abortion, telling her that she should be healed from the abortion. She then testified that Coles made her have sex "a couple times a week" between April 2 and July 5, 2004, when the family moved to Iowa.

Although, at one point during the trial, the State asked S.D. to estimate how many times Coles had molested her, we note that the estimation she gave was only for those crimes for which the jury acquitted Coles. In other words, S.D. "guessed" how many times Coles had molested her between the ages of ten and thirteen, but the jury acquitted him of those charges.

Thus, S.D. was able to put each incident in a time frame by detailing where it happened and which house she was living in. She was also able to place certain offenses within a particular time frame by tying the offenses to her grade in school. [case citations omitted] And, like *Yaacov*, but unlike the situations in *Valentine* and *Hemphill*, other evidence was presented to substantiate S.D.'s claims. Dawn Coles testified that Coles admitted to her that he and her daughter were "lovers." The medical records substantiated that S.D. had an abortion in April 2004. And the State was able to show that the frequency of rape increased when Dawn was pregnant.

In this case, the State attempted to set forth the factual basis for each incident of molestation that occurred over a three and one-half year period. The allegation was that Coles molested his stepdaughter repeatedly for over three years. The bill of particulars identified the victim, her date of birth, and the places the crimes occurred. The trial court instructed the jurors that each of the charges constitutes a distinct and separate offense, and that they must consider each count separately. [case citation omitted]

We also find that the failure to allege specific dates did not prejudice Coles' ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with S.D., regardless of the date or place she alleged the abuse took place. See *Yaacov*; *State v. Bennett*, Brown App. No. CA2004–09–028, 2005–Ohio–5898, ¶ 33 (remanded by In re Ohio Crim. Sentencing Statutes Cases, 109 Ohio St.3d 313, 2006–Ohio–2109, 847 N.E.2d 1174); *State v. Carnes*, Brown App. No. CA2005–01–001, 2006–Ohio–2134; *State v. Barnecut* (1988), 44 Ohio App.3d 149, 152, 542 N.E.2d 353.

---

[1]The record reflects this was S.D.'s second abortion resulting from her sexual abuse by Coles.

Thus, we conclude the indictment was properly filed and alleged sufficient facts to apprise Coles of the charges against him.

*Coles*, 2008 WL 4436872, at *6–8.[2]

Coles has not shown that the state appellate court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Richter*, 131 S. Ct. at 786–87. Our conclusion is consistent with our prior decisions distinguishing *Valentine* in § 2254 cases. *See Bruce v. Welch*, ___ F. App'x ___, 2014 WL 3360686, at *5 (6th Cir. July 10, 2014) (observing that "even if we assume that *Valentine* and *Russell* represent clearly established federal law, the facts of petitioner's case are sufficiently distinguishable from that authority" and "petitioner was provided with constitutionally adequate notice of the charges against him"); *Hardy v. Beightler*, 538 F. App'x 624, 629 (6th Cir. 2013) (distinguishing *Valentine*, noting the sexual assault prosecution "did not present the problems highlighted by this Court in *Valentine*" and "the record in this case allows us to be sure what double jeopardy would prohibit in the event of future proceedings because we can be sure of the factual incidents upon which the jury based its verdict"); *Cowherd v. Million*, 260 F. App'x 781, 786–87 (6th Cir. 2008) (per curiam) (holding the adult victim's trial testimony provided the necessary factual predicate for six sexual offense convictions and the testimony cured any defects in the indictment's drafting; "[t]he confluence of the charges, the trial testimony, and the jury verdicts . . . ensures both that Cowherd could

---

[2]We note that *Valentine* also recognized "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Valentine*, 395 F.3d at 632 (citing *Isaac*, 2000 WL 571959, at *5 and *Madden v. Tate*, No. 85-3061, 1987 WL 44909, at *1-3 (6th Cir. 1987)). This court repeated the same proposition recently in affirming the denial of habeas relief in a Michigan case involving a constitutional challenge to the notice given by the charging information in a child sexual abuse prosecution. *Stevenson v. Scutt*, 531 F. App'x 576, 580 (6th Cir. 2013) (citing *Valentine*).

successfully plead these convictions as a bar to any future prosecution based upon these acts, and that Cowherd was punished only for these six crimes and only once for each of the six offenses"). Accordingly, we affirm the district court's opinion on this issue.

**B. The prosecutor's remarks in closing argument did not result in an unfair trial**

Coles next contends that the prosecutor improperly vouched for S.D.'s credibility and attacked his character during closing argument. A prosecutor's improper comments during closing argument violate the Constitution only if they so infect the trial with unfairness that the resulting conviction is a denial of due process. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)).

On direct appeal, Coles pointed to two instances of alleged unfair prosecutorial vouching for S.D.'s credibility during closing argument. The prosecutor made the first remark at the beginning of closing argument: "I can't imagine a victim or witness in any case that would be more credible and believable than [S.D.] was in this case." The trial court sustained the defense objection, reminded the prosecutor to argue only the logical inferences to be drawn from the evidence and how to apply the law, and directed the prosecutor to start over. The prosecutor's second comment was: "[S.D.] did not [waver] from what she said before. She told the truth. You could see the demeanor." The trial court overruled the defense objection to this comment. The prosecutor's third remark was: "He is an abuser. He does his whoopings. He beats Dawn [S.D.'s mother]. Complete careless [dis]regard for anybody but himself. He gets his gratification off of beating people and off of raping [S.D.]" Defense counsel failed to object, but Coles now contends that the prosecutor asked the jury to infer his bad character, argued that he acted in conformity with his bad character, and was most likely guilty because of his bad character.

The Ohio Court of Appeals observed that the "State is permitted to comment on the testimony of witnesses and the evidence, and may suggest a logical conclusion that can be drawn." *Coles*, 2008 WL 4436872, at *11. The court agreed with Coles that the prosecutor improperly expressed a personal opinion during closing argument, but also ruled that the prosecutor "was arguably commenting on what the evidence showed. The prosecutor was not averring to his personal knowledge, but he was using the statements to enforce what the evidence and testimony revealed." *Id.* In addition, the state appellate court noted that the trial court cautioned the prosecutor and instructed the jury to disregard the prosecutor's statements. *Id.* Finally, the court found "that the overwhelming evidence of guilt renders this alleged error [of prosecutorial misconduct] harmless. The trial court instructed the jury that it must decide the case on the evidence and that . . . closing arguments were not evidence. We presume that the jury followed the court's instructions." *Id.* The court determined that the prosecutor's comments did not prejudice Coles or deny him a fair trial, and the court could not say "that absent the prosecutor's statements, the outcome of the trial would have been different." *Id.* at *11–12.

This state appellate decision is entitled to deference under AEDPA. *See Parker*, 132 S. Ct. at 2153. Even if the prosecutor's comments directed "the jury's attention to inappropriate considerations, that would not establish that the [state appellate court's] rejection of the *Darden* prosecutorial misconduct claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155 (quoting *Richter*, 131 S. Ct. at 786–87). In *Parker,* the Supreme Court ruled that this circuit "had no warrant to set aside the Kentucky Supreme Court's conclusion" on a prosecutorial misconduct claim, and similarly, no warrant exists to do so here.

In his brief filed in this court, Coles mentions two other comments made by the prosecutor during closing argument, but the State correctly points out that those comments were not raised as the basis for the prosecutorial misconduct claim on direct appeal in state court. Any claim of prosecutorial misconduct springing from those comments is now procedurally defaulted, and Coles has not demonstrated cause and prejudice for the default or that a miscarriage of justice will result if the claim is not heard. *See Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (per curiam).

## IV.  CONCLUSION

The Supreme Court has never held that a state prosecutor's use of a multiple-count, undifferentiated indictment violates a defendant's Sixth Amendment rights. Because of the lack of clearly established Supreme Court law on this point and the petitioner's failure to demonstrate that the decision of the Ohio Court of Appeals was contrary to, or an unreasonable application of, controlling Supreme Court law, Coles cannot obtain habeas relief on his claim that the indictment failed to give notice, to provide a fair opportunity to defend, and to provide protection from double jeopardy. In addition, the Supreme Court's decision in *Parker* compels us to defer to the state appellate court's decision that the prosecutor's comments during closing argument, though at times improper, did not result in an unfair trial.

Accordingly, we AFFIRM the judgment of the district court denying habeas relief.