[Cite as *State v. Perry*, 2025-Ohio-1486.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30158 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 03608 |
| | : | |
| MACK PERRY | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 25, 2025

. . . . . . . . . . .

ROBERT ALAN BRENNER, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Mack Perry appeals from his conviction on one count of rape, eight counts of gross sexual imposition, and five counts of disseminating matter harmful to juveniles.

{¶ 2} Perry contends the trial court erred in sentencing him for the wrong offenses on two counts of his indictment. He also alleges ineffective assistance of counsel for

failing to seek dismissal of some charges on statute-of-limitations grounds and failing to object to the jury's verdict being read in his absence. He additionally alleges a due-process violation resulting from his conviction on two undifferentiated counts of gross sexual imposition. Finally, he claims the trial court committed plain error by taking the jury's verdict while he was in the hospital.

{¶ 3} We conclude that the trial court erred in transposing two offenses when imposing Perry's sentence for two of his convictions. Regarding the statute of limitations, the State concedes that the five counts of disseminating matter harmful to juveniles were time barred. As for the other charges, Perry's attorney did not provide ineffective assistance by failing to raise a statute-of-limitations argument. The record also does not portray ineffective assistance of counsel for failing to object to the jury's verdict being read in Perry's absence, and the trial court's taking of the verdict was not plain error. Finally, we see no due-process violation resulting from Perry's conviction on two undifferentiated counts of gross sexual imposition. Accordingly, the trial court's judgment will be affirmed in part and reversed in part, and the case will be remanded for resentencing as set forth below. Perry's conviction on the five counts of disseminating matter harmful to juveniles will be vacated.

## I. Background

{¶ 4} In January 2023, a grand jury indicted Perry on the above-referenced charges after his three daughters reported that he had abused them sexually when they were young children. The abuse allegedly occurred between January 1, 2000, and December 31, 2003, at the family's home in Trotwood and later at their grandmother's

house in Dayton. Perry's daughters were in their 20s when they reported the abuse.

{¶ 5} The State's primary witnesses at trial were Perry's three daughters, A.P., T.P., and S.P. They testified that he had had sexual contact with them at both homes, that he had caused them to have sexual contact with him at both homes, and that he had caused them to have sexual contact with each other at both homes. They also testified about Perry showing them pornographic movies at both homes. Finally, S.P. testified about Perry engaging in an act of sexual conduct with her at the Dayton home. According to Perry's daughters, the abuse stopped when he left them and their mother and began living with another woman.

{¶ 6} A.P. first disclosed the abuse to her uncle in 2007 after seeing a presentation on sexual abuse while at camp. The girls' mother confirmed that they first disclosed the abuse in 2007. Their mother testified that she had reported the abuse to Kettering police in 2009 but was told that nothing could be done because the statute of limitations had expired. After seeing a therapist and processing what had occurred when she was younger, A.P. personally reported the abuse to police in 2022. Upon learning that A.P. had reported the abuse, T.P. and S.P. went to the police department together and did likewise a short time later.

{¶ 7} Perry testified in his own defense at trial. He denied all allegations against him. He suggested that his daughters were angry at him for abandoning them and for becoming financially successful after leaving them.

{¶ 8} Based on the evidence presented, a jury returned a guilty verdict on all counts. The trial court imposed partially consecutive sentences totaling 29.5 years in

prison. Perry timely appealed, advancing four assignments of error.

## II. Analysis

{¶ 9} The first assignment of error states:

THE TRIAL COURT COMMITTED PLAIN ERROR BY SENTENCING PERRY TO THE WRONG OFFENSES.

{¶ 10} Perry contends the trial court committed plain error by sentencing him for gross sexual imposition on count five of the indictment, which charged him with disseminating matter harmful to juveniles. He likewise claims the trial court erred in sentencing him for disseminating matter harmful to juveniles on count eleven, which charged him with gross sexual imposition.

{¶ 11} The State concedes that the trial court committed plain error by transposing the count numbers when announcing Perry's sentence on counts five and eleven, and we agree. Count five charged Perry with disseminating matter harmful to juveniles. The jury properly was instructed on that charge and found him guilty. Count eleven charged Perry with gross sexual imposition. Again, the jury properly was instructed on that charge and found him guilty. When sentencing Perry, however, the trial court mistakenly identified count five as gross sexual imposition and count eleven as disseminating matter harmful to juveniles. Under these circumstances, a remand for resentencing is appropriate so the trial court can impose the correct sentence for the correct offense of conviction.[1] The first

---

[1] As will be explained in our analysis of Perry's second assignment of error, his conviction on count five for disseminating matter harmful to juveniles must be vacated because the

assignment of error is sustained.

{¶ 12} The second assignment of error states:

PERRY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO FILE A MOTION TO DISMISS BECAUSE THE STATUTE OF LIMITATIONS HAD EXPIRED.

{¶ 13} Perry alleges ineffective assistance of counsel based on his attorney's failure to seek dismissal of the disseminating-matter-harmful-to-juveniles and gross-sexual-imposition charges on statute-of-limitations grounds.

{¶ 14} The parties agree that the statute of limitations for disseminating matter harmful to juveniles was six years and that the applicable limitations period for gross sexual imposition was 20 years. Perry cites trial testimony establishing that he moved out of the second of the two residences in March 2002, meaning that any sexual abuse necessarily stopped by then. He also cites the victims' mother's testimony that she contacted Kettering police sometime in 2009 and reported the abuse, explaining "what had happened in detail." Finally, Perry notes that he was not indicted until January 12, 2023, and that his daughters were 28, 27, and 24 years old at that time.

{¶ 15} Relying on the foregoing dates and time periods, Perry asserts that the disseminating-matter-harmful-to-juveniles offenses occurred more than six years before his indictment and that the gross-sexual-imposition offenses occurred more than 20 years before his indictment. Therefore, he contends his attorney provided ineffective assistance

statute of limitations had expired. As a result, the trial court will need to resentence him only for gross sexual imposition on count eleven.

by failing to seek dismissal of those charges on statute-of-limitations grounds.

{¶ 16} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus.

{¶ 17} Regarding the charges for disseminating matter harmful to juveniles, the State concedes that they were time barred by the applicable six-year statute of limitations. As noted above, Perry was charged with five counts of that offense. Given that he moved out of the second residence in March 2002, the last of those offenses necessarily occurred no later than then.

{¶ 18} Although a statute of limitations ordinarily begins to run when an offense is committed, it is tolled "during any time when the corpus delicti remains undiscovered." R.C. 2901.13(G). "[T]he corpus delicti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act." *State v. Hensley*, 59 Ohio St.3d 136 (1991), syllabus. A "responsible adult" includes a peace officer. R.C. 2151.421(A)(1)(b).

{¶ 19} Here the State concedes that the six-year statute of limitations for disseminating matter harmful to juveniles began running no later than sometime in 2009, when Perry's daughters' mother contacted Kettering police and reported the sexual abuse. Therefore, the State also concedes that the limitations period expired long before

his indictment in January 2023. Given the State's concessions, we conclude that Perry's trial counsel rendered deficient performance by not seeking dismissal of the five counts of disseminating matter harmful to juveniles. Counsel's deficient performance prejudiced Perry, who was found guilty and sentenced on those time-barred counts.

{¶ 20} We reach a different conclusion, however, regarding the eight counts of gross sexual imposition. Perry asserts that he moved out of the second residence in March 2002, meaning that the 20-year statute of limitations expired no later than March 2022. Given that he was not indicted until January 2023, he contends the gross-sexual-imposition charges were time barred.

{¶ 21} Contrary to Perry's argument, the limitations period did not begin running when the gross-sexual-imposition offenses were committed. The three victims were young children when he abused them. Therefore, the statute of limitations did not begin to run until they reached the age of majority or a responsible adult learned of the abuse. As noted above, the victims' mother notified Kettering police of Perry's abusive acts sometime in 2009 while the girls were still minors. Therefore, the 20-year statute of limitations for gross sexual imposition began to run at that time. Given that Perry was indicted less than 20 years later in January 2023, the gross-sexual-imposition charges were not time barred.

{¶ 22} In opposition to our conclusion, Perry contends we should remand the case to give him an opportunity to rebut the State's argument about the limitations period beginning to run in 2009. In support, he cites *State v. Hawkins*, 2019-Ohio-5133 (8th Dist.). The issue in that case was whether the statute of limitations was tolled by the

defendant's purposefully avoiding prosecution. On the record before it, the Eighth District found a reasonable probability that the defendant had not purposefully avoided prosecution. Therefore, the appellate court sustained an assignment of error alleging ineffective assistance of counsel and remanded to give the defendant an opportunity to file a motion to dismiss on statute-of-limitations grounds.

{¶ 23} Unlike *Hawkins*, we see no reasonable probability that the statute of limitations for Perry's gross-sexual-imposition offenses commenced prior to 2009. Nothing in the record supports such a conclusion. Perry's argument is that the limitations period began to run no later than March 2002 when he moved away from his daughters. At that time, however, they were young children, and he does not contend that a responsible adult was aware of the abuse. On the record before us, we see no factual basis for a motion to dismiss the gross-sexual-imposition charges on statute-of-limitations grounds. Therefore, Perry's trial counsel did not provide ineffective assistance by failing to file such a motion.

{¶ 24} Under his second assignment of error, Perry also briefly alleges ineffective assistance of counsel based on his attorney's failure to object to reading the jury's verdict in his absence. He notes that he had a constitutional right to be present when the verdict was read, and he attributes his absence to a medical emergency. He contends there is a reasonable probability that the trial court would have delayed reading the verdict if his attorney had objected.

{¶ 25} Upon review, we see no ineffective assistance of counsel. "An accused has a fundamental right to be present at all stages of his criminal trial. Section 10, Article I,

Ohio Constitution; Crim.R. 43(A). An accused's absence, however, does not necessarily result in prejudicial or constitutional error." *State v. Davis*, 2008-Ohio-2, ¶ 90. A defendant's presence is a due-process requirement only to the extent that a fair hearing would be denied in his absence. *Id*. Moreover, a defendant may waive his right to be present at a critical stage of trial, either through the actions of his counsel or through his own actions, including voluntary absence from a proceeding. *State v. Harris*, 2023-Ohio-3271, ¶ 36-37 (2d Dist.).

{¶ 26} Here defense counsel informed the trial court of Perry's absence shortly after the jury reached a verdict. Defense counsel reported that Perry had claimed to be experiencing heart issues or possibly suffering from a stroke while the jury deliberated. Defense counsel stated that he met Perry outside near the courthouse and summoned help from two deputies. Defense counsel explained that he watched a medical unit arrive to take Perry to the hospital. Defense counsel also reported having advised Perry's girlfriend that the verdict would be read in Perry's absence.

{¶ 27} After receiving the foregoing information, the trial court expressed skepticism, noting that Perry had a history of delaying his trial due to claimed health issues. He twice had caused his trial date to be postponed by complaining of heart issues or chest pains on the morning of his scheduled trial. On one occasion, prospective jurors were sent home. On the other occasion, a jury was sworn in and then dismissed after Perry went to the hospital. After noting this history, the trial court stated:

So I don't know what's going on with him, but it seems to only happen during the time of trial, and there's only so much delay you can have in this.

The jury has heard all of the evidence. The jury has deliberated. And the jury has verdicts, so we are going to hear those verdicts with or without Mr. Perry's presence.

{¶ 28} Based on the foregoing circumstances, we do not believe defense counsel rendered deficient performance by failing to object to reading the jury's verdict in Perry's absence. Defense counsel arguably waived Perry's presence by informing the trial court he already had advised Perry's girlfriend that the verdict would be read without Perry. We note too that Perry himself arguably waived his presence by going to the hospital again. Whether Perry's actions in fact constituted voluntary absence likely would depend on whether his medical issues were feigned or real. Given his knowledge of the circumstances and his familiarity with Perry, defense counsel reasonably may have believed that it was in Perry's best interest not to pursue that issue and, instead, to allow the jury's verdict to be taken.

{¶ 29} Finally, even if we assume, arguendo, that defense counsel provided deficient representation by not objecting, we see no prejudice. We fail to see how Perry was harmed by having the verdict read in his absence. Notably, defense counsel had the jury polled on Perry's behalf after the verdict was announced. There is nothing more that Perry could have done if he had been present. Moreover, based on the trial court's remarks, it is unlikely that the trial court would have delayed taking the jury's verdict if defense counsel had objected. For these reasons, we see no prejudice resulting from the lack of an objection.

{¶ 30} Perry's second assignment of error is sustained as to the five counts of

disseminating matter harmful to juveniles. Those convictions will be vacated on statute-of-limitations grounds. The second assignment of error is overruled as to the eight counts of gross sexual imposition, which were not time barred. Finally, the second assignment of error is overruled insofar as Perry alleges ineffective assistance of counsel for not objecting to reading the jury's verdict in his absence.

{¶ 31} The third assignment of error states:

THE TRIAL COURT DENIED PERRY'S RIGHT TO DUE PROCESS UNDER ARTICLE I, SECTION 16 OF THE CONSTITUTION OF THE STATE OF OHIO AND AMENDMENTS V AND XIV OF THE CONSTITUTION OF THE UNITED STATES.

{¶ 32} Perry alleges that he was convicted on two undifferentiated gross-sexual-imposition charges in violation of his right to due process. His argument involves counts six and eight of his indictment. Those identically-worded charges alleged that he "did have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more persons to have sexual contact, less than thirteen (13) years of age, whether or not the offender knew the age of such person and with the purpose of sexually arousing or gratifying himself or the victim[.]" A bill of particulars specified the nature of the sexual contact. As to counts six and eight, the bill of particulars provided the following explanation for both counts:

. . . [T]he State will prove that between the dates of January 1, 2001, and December 31, 2003, in Montgomery County, Ohio, the defendant, Mack

Perry, did have sexual contact with another, [A.P.], who was less than thirteen years of age. The sexual contact alleged in this count is Defendant directing [A.P.] to touch his penis. This offense occurred [on] Fernwood Avenue, Dayton, Ohio. This is in violation of 2907.05(A)(4) of the Ohio Revised Code.

{¶ 33} As relevant to counts six and eight, A.P. testified at trial that "several incidents" of sexual touching occurred on Fernwood Avenue at "several locations" in the house, both upstairs and in a basement bathroom. When asked what happened in the basement bathroom, she responded: "I specifically remember Mack pulling out his penis and making me touch his penis in that bathroom." The prosecutor then asked whether acts of sexual touching that she had described, including being instructed to touch her father's penis, each had happened more than one time on Fernwood Avenue. A.P. responded: "Absolutely." In its closing argument, the prosecutor told the jury that count six "deals with the causing [A.P.] to touch the Defendant's penis." Regarding count eight, the prosecutor stated that it involved "causing [A.P.] to touch the Defendant's penis another time." The jury found Perry guilty on both counts.

{¶ 34} Although A.P.'s testimony supported a finding that Perry caused her to touch his penis at least twice in the basement bathroom on Fernwood Avenue, he contends his conviction on counts six and eight violated due process. In support, he relies exclusively on *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). In that case, an Ohio jury convicted the defendant of 20 "carbon copy" counts of child rape and 20 "carbon copy" counts of felonious sexual penetration. The State provided no factual basis for

distinguishing each of the charges in the indictment, the bill of particulars, or at trial. The only evidence about the number of offenses came from the eight-year-old victim, who recalled the following:

> . . . She testified that Valentine forced her to perform fellatio in the family living room on "about twenty" occasions and that Valentine digitally penetrated her vagina in the family living room on "about fifteen" occasions. The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom. She additionally testified that Valentine achieved anal penetration with his penis on "about ten" occasions.

*Id.* at 629.

{¶ 35} A jury returned a guilty verdict on all 40 counts. The Eighth District Court of Appeals affirmed the convictions on all 20 counts of rape and 15 of 20 counts of felonious sexual penetration. It reversed the convictions on five counts of felonious sexual penetration, apparently based "on the child's testimony that Valentine had digitally penetrated her vagina 'about fifteen' times." *Id.* A federal district court later granted the defendant a writ of habeas corpus, finding that "identical counts in the indictment violated his due process right to be notified of the crime charged with reasonable certainty so that he could fairly protect himself from double jeopardy." *Id.* at 630.

{¶ 36} In a two-to-one decision, the Sixth Circuit Court of Appeals affirmed the district court's judgment granting the writ as to all but two counts. The majority opined that "the problem is that within each set of 20 counts, there are absolutely no distinctions

made." *Id.* at 632. The Sixth Circuit reasoned:

> . . . Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.
>
> Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own. The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20. Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest. Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents. The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts. Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

*Id.* at 632-633.

{¶ 37} The Sixth Circuit recognized that "[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial." *Id.* at 634. Given the lack of differentiation, however, the Sixth Circuit criticized the trial court for effectively subjecting the defendant to an "all or nothing" case. The majority opined that the jury realistically only could have convicted or acquitted the defendant on all counts. *Id.* The appellate court also voiced double-jeopardy concerns, noting that the lack of specificity (1) precluded the defendant from pleading convictions or acquittals as a bar to future prosecutions and (2) created the "very real possibility" that the defendant "would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense." *Id.* at 634-635.

{¶ 38} Ultimately, the Sixth Circuit upheld convictions on only one count of rape and one count of felonious sexual penetration, noting "substantial evidence of ongoing abuse, against which Valentine had notice and opportunity to defend." *Id.* at 637. In so doing, the majority reasoned:

> Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts. The exigencies of child abuse cases necessitate considerable latitude in the construction of criminal charges. The prosecutors in this case, however, abused this wide latitude by piling on multiple identical counts. Numerous charges cannot be made out through estimation or inference. Instead, if prosecutors seek

> multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. Due process requires this minimal step. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction.

*Id.* at 636-637.

{¶ 39} Nine years later, the Sixth Circuit decided *Coles v. Smith*, 577 Fed. Appx. 502 (6th Cir. 2014), and revisited *Valentine*. Affirming the denial of habeas relief in *Coles*, the Sixth Circuit noted that no U.S. Supreme Court case ever had found identically worded and factually indistinguishable counts in a state-court indictment to be unconstitutional. *Id.* at 507-508. As a result, the *Coles* court questioned its ability to rely on *Valentine* to authorize habeas relief. *Id.* at 508. Assuming, arguendo, that *Valentine* could be relied on, the Sixth Circuit found that the State had provided a sufficient factual predicate at trial for the defendant's conviction on 43 counts of raping his stepdaughter over a three-and-one-half-year period. Although the victim did not differentiate 43 specific incidents, she identified the houses where she lived, the approximate time frame, the rooms where the abuse occurred, and the sexual activities involved. *Id.* at 508-510.

{¶ 40} In the years following *Valentine*, Ohio's state courts frequently have distinguished it or simply declined to follow it. The Seventh District Court of Appeals, for example, consistently has refused to apply *Valentine*. *See State v. Palmer*, 2021-Ohio-4639, ¶ 24 (7th Dist.) ("As appellant acknowledges, we are not bound by *Valentine* and do not follow *Valentine*."); *State v. Miller*, 2018-Ohio-3430, ¶ 22-31 (7th Dist.), *abrogated on other grounds by State v. Haynes*, 2022-Ohio-4473 (rejecting *Valentine's* analysis,

finding no due-process violation where victims testified about a "definite minimum number of times" that sexual abuse occurred, and noting that potential double-jeopardy concerns could be addressed if they arose in the future); *State v. Triplett*, 2018-Ohio-5405, ¶ 83 (7th Dist.) (opining that *Valentine* "would improperly protect a defendant who committed multiple instances of the same offense against a child in his care," and reasoning that "[c]ontrary to the *Valentine* majority's claim, there is no indication the jury would believe its finding of guilt on one count of child endangering would require a conviction on another count of child endangering merely because it contained the same elements and the same date range"); *see also State v. Schwarzman*, 2014-Ohio-2393, ¶ 11 (8th Dist.), quoting *State v. Billman*, 2013-Ohio-5774, ¶ 34 ("*Valentine* has no binding effect on Ohio courts. It has been criticized for applying law that does not apply to Ohio grand juries, misapplying and misrepresenting case authority, and being 'distinguished in every subsequent Sixth Circuit decision that cites it on this issue.' ").

{¶ 41} For our part, we have recognized that "*Valentine* has no binding effect on Ohio courts" while nevertheless citing it regarding "the need to differentiate multiple counts of abuse at trial or through a bill of particulars." *State v. Artz*, 2015-Ohio-5291, ¶ 34 (2d Dist.). In *Artz*, we rejected a *Valentine* argument and upheld the defendant's convictions on three counts of raping victim "A." by fellatio. Although the abusive act occurred the same way every time, the victim provided sufficient details to enable a jury to conclude that it had happened at least three times. *Id.* at ¶ 25, 35. The Ohio Supreme Court also distinguished *Valentine* in *State v. Sowell*, 2016-Ohio-8025, based in part on the fact that *Valentine* involved "two sets of 20 identically phrased charges" whereas

*Sowell* only involved "two sets of two identically phrased charges." *Id.* at ¶ 122-123; *see also State v. Hlavsa*, 2011-Ohio-3379, ¶ 16 (8th Dist.) ("Finally, A.H. testified that Hlavsa raped her anally twice. Although A.H. did not provide details of the anal intercourse, two is a definite number as opposed to an estimate."); *State v. Crawford*, 2008-Ohio-6260, ¶ 17, 45-49 (5th Dist.) (rejecting a *Valentine* argument and affirming the defendant's conviction on 53 counts of sexually abusing his two stepdaughters, who described sex acts that occurred weekly or monthly for years and gave numerical estimates as to how often the abuse occurred).

**{¶ 42}** In the present case, Perry did not object to the language of his indictment or to the bill of particulars. As to those filings, then, he waived all but plain error, which requires proof of an obvious error and a reasonable probability that the error was prejudicial. *State v. Moore*, 2024-Ohio-6050, ¶ 51 (2d Dist.). Having reviewed the record, we see no error, plain or otherwise. The indictment was sufficient, as it tracked the language of the applicable statutes and included the elements of the charges. *State v. Shaw*, 2008-Ohio-1317, ¶ 20 (2d Dist.). "Because the nature of the sexual acts had no bearing on the identity or severity of the offenses, the specific acts were not essential elements of the crimes and therefore were not required to be set forth" in the indictment. *Id.* In any event, the bill of particulars identified the specific acts underlying counts six and eight as Perry twice directing A.P. to touch his penis on Fernwood Avenue within a particular date range.

**{¶ 43}** Finally, as for A.P.'s trial testimony, it enabled the jury reasonably to find Perry guilty of gross sexual imposition on counts six and eight. Regardless of *Valentine's*

arguable validity or persuasiveness, we find it to be distinguishable. The primary problem in *Valentine* was that it involved two sets of 20 counts with "absolutely no distinctions made," no factual differentiation between them at trial, and only estimates by the victim as to how many times each abusive act had occurred. *Valentine,* 395 F.3d at 632-633.

{¶ 44} Unlike *Valentine*, Perry challenges only two counts of gross sexual imposition. When addressing the gross-sexual-imposition charges in counts six and eight, A.P. recalled Perry "pulling out his penis and making [her] touch his penis in [the basement] bathroom" on Fernwood Avenue. She responded affirmatively when asked whether he had engaged in that specific act with her more than once at that location. In our view, this testimony supported his conviction on counts six and eight. A.P. undoubtedly knew the difference between something happening one time or more than one time. At a minimum, more than one time meant twice. Therefore, A.P.'s testimony allowed the jury to conclude, beyond a reasonable doubt, that Perry had caused her to touch his penis two times in the basement bathroom on Fernwood Avenue, as alleged in counts six and eight. Unlike *Valentine*, her testimony was specific regarding the nature and location of Perry's conduct, and it did not involve estimates of dozens of undifferentiated abusive sex acts. We see no due-process violation. Accordingly, the third assignment of error is overruled.

{¶ 45} The fourth assignment of error states:

THE TRIAL COURT ERRED WHEN IT HAD THE VERDICT READ WHILE PERRY WAS NOT PRESENT.

{¶ 46} Perry again challenges the reading of the jury's verdict in his absence. We

note, however, that defense counsel did not object when the trial court took the verdict. Counsel's failure to object to Perry's absence waived all but plain error, which has not been demonstrated.

{¶ 47} While informing the trial court of Perry's absence, defense counsel asserted that a medic had taken him to the hospital for apparent heart trouble. Defense counsel added that he already had spoken to Perry's girlfriend and had told her "the verdict will still be read." When defense counsel made this statement to Perry's girlfriend, the trial court was unaware of Perry's medical problem and, therefore, had not yet decided to take the verdict in his absence. Under these circumstances, defense counsel arguably waived Perry's presence by advising the trial court that he already had told Perry's girlfriend "the verdict will still be read." Therefore, the trial court's decision to proceed in his absence was not an obvious error.

{¶ 48} We note too that a defendant's own actions, including voluntary absence, may result in a waiver of his right to be present at a critical stage of trial. *Harris*, 2023-Ohio-3271, ¶ 37 (2d Dist.). Upon learning of Perry's absence, the trial court outlined his history of last-minute medical issues. The trial court observed that twice before it had excused juries and rescheduled Perry's trial due to his complaining of chest pain and going to the hospital. The trial court also pointed out that Perry's medical emergencies seemed "to only happen during the time of trial." Given Perry's history of delaying court proceedings by claiming heart problems, the record arguably supports a finding that his absence from the reading of the verdict was voluntary. That being so, the trial court's decision to proceed in his absence was not an obvious error.

{¶ 49} Finally, a defendant's improper absence from a critical stage of criminal proceedings does not constitute structural error and, therefore, can constitute harmless error where no prejudice exists. *State v. Reed*, 2010-Ohio-5819, ¶ 13 (10th Dist.), citing *State v. Williams*, 6 Ohio St.3d 281, 285-287 (1983); *see also State v. Steimle*, 2011-Ohio-1071, ¶ 17 (8th Dist.) (citing *Reed* and agreeing "that although the right to be present at all critical stages of a criminal trial is a fundamental right, a violation of Crim.R. 43 is not structural error and can constitute harmless error where the defendant suffers no prejudice").

{¶ 50} Even if we assume, arguendo, that the trial court erred in proceeding without Perry, the error was harmless and non-prejudicial. After the jury's verdict was read on each count, defense counsel had the jurors polled. Each juror confirmed his or her verdict. There is nothing more Perry could have done if he had been present, and there is no reason to believe that the verdict would have been different if the trial court had delayed the proceeding. Absent any prejudice to Perry, we see no plain error. The fourth assignment of error is overruled.

## III. Conclusion

{¶ 51} The trial court's judgment is affirmed in part, reversed in part, vacated in part, and remanded for resentencing. In particular, Perry's conviction on five counts of disseminating matter harmful to juveniles is vacated on statute-of-limitations grounds. As set forth above, a remand also is required for the trial court to resentence Perry properly. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.